James E. KOENIG, Plaintiff,

v.

**WASTE MANAGEMENT, INC., and Waste Management Holdings, Inc., Defendants.**

No. 99 C 1560.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 3, 1999.

---

Sarah R. Wolff, Jonathan Stuart Quinn, Matthew John O'Hara, Sachnoff & Weaver, Ltd., Chicago, IL, for James E. Koenig, plaintiff.

Timothy Alan Nelsen, Donna L. McDevitt, Matthew Robert Kipp, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, for Waste Management, Inc., defendant.

### *MEMORANDUM OPINION AND ORDER*

CASTILLO, District Judge.

Plaintiff James E. Koenig ("Koenig") sued Defendants Waste Management, Inc. and Waste Management Holdings, Inc., alleging violations of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461 (1999), and breach of his employment contract. Koenig, a former corporate executive of Waste Management, seeks payment of plan benefits earned under an executive compensation plan. Waste Management has filed a motion to dismiss Koenig's amended complaint for failure to state a claim. Fed. R.Civ.P. 12(b)(6). For the reasons set forth below, Defendants' motion is denied.

### RELEVANT FACTS

In 1977, Koenig was hired by Waste Management, Inc. ("Old Waste" [1]), where

1. As discussed below, Waste Management, Inc. ultimately merged with USA Waste, but retained the name "Waste Management Holdings, Inc." For simplicity, the Court will refer to the pre-merger entity as "Old Waste" and the post-merger entity as "New Waste."

he ultimately rose to the level of Chief Financial Officer ("CFO") and Executive Vice President ("EVP"). In January 1988, Old Waste established the Supplemental Executive Retirement Plan (the "SERP"), which provided benefits to certain executive-level employees who had worked at the company for at least 10 years. Under Section 9 of the SERP, benefits could be forfeited if a plan participant engaged in competition with the Company, was discharged for cause, or performed acts of willful malfeasance or gross negligence. Furthermore, Section 13 of the SERP prohibited amendments that reduced or impaired the benefits then currently payable to a plan participant. The Compensation and Stock Options Committee of Old Waste's Board of Directors administered the SERP, and Koenig was at all relevant times a participant in the SERP.

In January 1997, Koenig resigned as CFO of Old Waste but retained his position as EVP until October 31, 1997. At that time, Koenig resigned the EVP position as well, remaining as an employee of Old Waste without regularly assigned duties. Koenig was not awarded bonuses or other incentive compensation in either 1997 or 1998.

In March 1998, Old Waste agreed to merge with a competitor, USA Waste Services, Inc. ("USA"). As part of a tentative Merger Agreement, USA was to assume all of Old Waste's liabilities, including Old Waste's obligations under the SERP. USA and Old Waste agreed to terminate the SERP as of the effective date of the merger; thus all SERP benefits would fully vest and be distributed in lump sum payments upon the merger. On June 9, 1998, approximately five weeks before the effective date of the merger, USA and Old Waste published, in a Joint Proxy Statement, a schedule of employees who were entitled to receive benefits under the SERP termination agreement. The Joint Proxy Statement listed Koenig as an employee entitled to a SERP payment.

Following publication of the Joint Proxy Statement, several events occurred that gave rise to the present case. On July 14, two days before the merger, Old Waste's Board of Directors ("the Board") twice amended the SERP without notice to Koenig. First, the Board terminated the SERP effective immediately contingent upon the closing of the merger with USA. Second, the Board adopted a resolution allowing the Audit Committee of the Board, and its duly appointed successor, to determine if any current or former employees had committed acts of gross negligence or willful malfeasance, thus forfeiting their benefits under Section 9 of the SERP.

On July 16, 1998, Old Waste and USA completed the merger, and the merged entity retained the name Waste Management Holdings, Inc. ("New Waste"). The same day, New Waste's Board of Directors passed an additional amendment (the "First Amendment") to the SERP that achieved two objectives. Initially, the First Amendment created a procedure for withholding benefits subject to forfeiture under Section 9. If a SERP participant was under investigation for "gross negligence" or "willful malfeasance," then his or her benefits would be directed to an interest-bearing escrow account, subject to forfeiture pending the conclusion of the investigation. Second, consistent with the premerger plans to terminate the SERP, the First Amendment authorized lump sum payments to SERP beneficiaries.

In November 1998, New Waste's Board of Directors took several actions affecting Koenig's benefits. On November 2, the Board passed a resolution to place Koenig's SERP benefits, which totaled approximately $2.6 million, into an interest-bearing escrow account. On November 20, New Waste notified Koenig of its decision to defer payment of his SERP benefits "pending the outcome of the Audit Committee's investigation." (R. 11, Pl.'s Am. Compl. ¶ 32 (internal quotations omitted).) On December 30, New Waste distributed lump sum payments to all SERP beneficia-

ries except Koenig and three other Old Waste executives.

In response, Koenig filed a four-count complaint seeking recovery of his SERP benefits. In Count I, Koenig charges that the First Amendment's escrow-account provision violates SERP Section 13, which prohibits amendments that "reduce or impair" a participant's benefits. In Count II, Koenig asserts that Waste Management alienated or encumbered his benefits, in violation of SERP Section 14, by placing the benefits in an escrow account and denying him access to the money. In Count III, Koenig sets forth an estoppel claim, arguing that he detrimentally relied on Old Waste's and USA's statements in both the Joint Proxy Statement/Prospectus and Merger Agreement that he would receive a lump sum payment. Finally, Count IV alleges that both Old Waste and New Waste violated the terms of his employment contract by failing to pay him scheduled bonuses and other compensation.

New Waste asks us to dismiss the complaint in its entirety because Koenig failed to exhaust the administrative remedies available to him under the SERP. Alternatively, New Waste argues that the First Amendment did not violate the SERP's original terms. Finally, New Waste asserts that Koenig's amended complaint fails to state a valid claim for breach of the employment agreement between Old Waste and Koenig.

## ANALYSIS

### A. Standard of Review

A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n. 1 (7th Cir.1996). The court must view all facts alleged in the complaint, as well as draw any reasonable inferences from those facts, in the light most favorable to the plaintiff. *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir.1996); *Dawson v. General Motors Corp.*, 977 F.2d 369, 372 (7th Cir.1992). Any ambiguities are likewise resolved in the plaintiff's favor. *Dawson*, 977 F.2d at

372. A complaint will not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts warranting relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Panaras v. Liquid Carbonic Industries Corp.*, 74 F.3d 786, 791 (7th Cir.1996).

### B. Exhaustion of Administrative Remedies

New Waste seeks dismissal of the amended complaint in its entirety because Koenig failed to exhaust the administrative remedies available to him under the SERP. *See Kross v. Western Elec. Co.*, 701 F.2d 1238 (7th Cir.1983). The preference in this Circuit is to require the exhaustion of administrative remedies before a plaintiff may file a federal claim alleging an ERISA violation. *Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231, 1235 (7th Cir.1997). Courts require exhaustion of administrative remedies to minimize frivolous lawsuits, promote a non-adversarial dispute resolution process and decrease costs associated with disputed claims. *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir.1996); *see also Kross*, 701 F.2d at 1245 (judicially mandated exhaustion requirements enhance trustees' ability to manage funds); *Challenger v. Local Union No. 1 of Int'l Bridge Structural and Ornamental Ironworkers*, 619 F.2d 645, 649 (7th Cir.1980) ("To make every claim dispute into a federal case would undermine the claim procedure contemplated by [ERISA].").

■ Courts, however, have the discretion to excuse a plaintiff's failure to exhaust administrative remedies. *Powell v. A.T. & T. Communications, Inc.*, 938 F.2d 823, 825 (7th Cir.1991); *Kross*, 701 F.2d at 1244. In making this discretionary determination, "a district court may excuse a plaintiff's failure to exhaust administrative remedies (1) if there has been a lack of meaningful access to the review procedures or (2) if exhaustion of internal procedures would be futile." *Robyns*, 130 F.3d

at 1236; *Smith v. Blue Cross & Blue Shield United,* 959 F.2d 655, 658–59 (7th Cir.1992).

■ Koenig has alleged facts sufficient to excuse his failure to exhaust administrative remedies. Section 12 of the SERP specifies the procedures for disputed claims. Notably, disputes were handled by the Compensation and Stock Options Committee of Old Waste's Board of Directors. But, by the time Koenig received notice that his SERP benefits had been directed to an escrow account, that Committee had ceased to exist. Neither Old nor New Waste appointed a successor to the Compensation and Stock Options Committee that would be responsible for coordinating claims procedures subsequent to the completed merger. Thus, Koenig could not challenge New Waste's decisions to direct his SERP benefits into the escrow account: the entity charged with hearing such a claim no longer existed. *See Salus v. GTE Directories Serv. Corp.,* 104 F.3d 131, 138–39 (7th Cir.1997) (a court must consider all avenues available to the plan participant). At this stage of the proceedings, Koenig has adequately demonstrated that meaningful access to review was severely curtailed. *See Wilczynski v. Lumbermens Mut. Cas. Co.,* 93 F.3d 397, 402–403 (7th Cir.1996) (a court cannot dismiss a complaint that sufficiently alleges the denial of meaningful access to administrative review). As such, we need not consider whether Koenig's pursuit of administrative remedies would have been futile. New Waste's motion to dismiss the complaint in its entirely based on Koenig's failure to invoke his administrative remedies is denied.

## C. Breach of Contract (Section 13 of the SERP)

Section 13 of the SERP ("Amendment and Termination" provision) states:

The Plan may be amended.... However, *no such action shall, without the consent of the Participant, reduce or impair the benefits then currently payable to a participant* or surviving spouse, nor divest a Participant of any benefits such participant would have been entitled to receive had such Participant resigned from the Company's employ immediately before the effective date of the amendment or termination. (R. 11, Pl.'s Am.Compl., Ex. A, SERP at Section 13 (emphasis added).) Koenig alleges that the First Amendment violates Section 13 of the SERP because the First Amendment's escrow account provision constitutes a reduction or impairment in benefits. As such, he argues, its adoption required Koenig's consent under Section 13.

New Waste responds that directing Koenig's benefits to an interest-bearing escrow account, while delaying payment, in no way reduces or impairs Koenig's benefits. Alternatively, New Waste asserts that the language "then currently payable" in Section 13 is fatal to Koenig's claim because at the time of the First Amendment, and immediately prior to the plan's termination, Koenig was not entitled to a lump sum payment under the SERP.

To assess whether Koenig has stated a claim upon which relief could be granted, we must address two questions. First, at the time of the First Amendment, was Koenig entitled to any benefits under the SERP? Second, if Koenig was entitled to benefits at that time, did the First Amendment reduce or impair his vested benefits in violation of Section 13?

### 1. Was Koenig entitled to benefits under the SERP?

■ The parties agree that the SERP is an ERISA "top hat" plan. Top hat plans represent a special category of ERISA benefit plans that provide compensation arrangements to a select group of management-level employees. *See* 29 U.S.C. §§ 1051(2), 1081(a)(3), and § 1101(a)(1); *Olander v. Bucyrus–Erie Co.,* 187 F.3d 599, 604 (7th Cir.1999). Top hat plans are exempt from ERISA's substantive provisions, including the vesting, funding, and fiduciary requirements; but they are subject to ERISA's enforcement

provisions. *In re New Valley Corp.,* 89 F.3d 143, 148–49 (3d Cir.1996); *Kemmerer v. ICI Americas, Inc.,* 70 F.3d 281, 286–87 (3d Cir.1995). Federal common law developed under ERISA generally governs the enforcement of top hat plans. *Fasco Indus., Inc. v. Mack,* 843 F.Supp. 1252, 1255 (N.D.Ill.1994).

■ Usually, top hat plan participants are high-level executive employees who "retain sufficient bargaining power to negotiate particular terms and rights under the plan and therefore do not need ERISA's substantive rights and protections." *Kemmerer,* 70 F.3d at 288. That being said, "it would be absurd to deny such individuals the ability to enforce the terms of their plans." *Id.* (internal quotations omitted). Such a denial would likely render top hat plan participants unable to negotiate much more than illusory promises. *Id.* Federal courts thus treat top hat plans as unilateral contracts, which create a vested right in those employees who fulfill the plan's requirements. *Id.* at 287; *see also In re New Valley Corp.,* 89 F.3d at 150–51 ("Under unilateral contract principles, once the employee performs, the offer becomes irrevocable, the contract is completed, and the employer is required to comply with its side of the bargain.").

In the present case, the SERP was a contract between Koenig and Old Waste. Under its terms, Koenig qualified for SERP benefits because his grade of employment was Level F or higher, and he had completed at least 10 years of service for the company. Thus, Koenig's benefits had fully vested prior to the First Amendment.

■ New Waste notes the apparent inconsistency regarding the fact that Koenig relies on the First Amendment to argue that he is entitled to a lump sum payment, while challenging the escrow account provision within the same amendment. Contrary to New Waste's assertion, there is no inconsistency. Koenig explicitly challenges the escrow provision because, he argues, it reduces or impairs his SERP benefits and thus requires his consent.

The provision creating lump sum payments does not suffer from a similar defect.

New Waste also asserts that all participants' SERP benefits were subject to forfeiture if they engaged in "willful malfeasance" or "gross negligence," as specified by SERP Section 9. Old Waste's Board of Directors clearly had the authority to make a finding of gross negligence or willful malfeasance. But neither Old Waste nor New Waste ever determined that Koenig engaged in either activity. Instead, New Waste's Board of Directors pursued an alternative strategy by enacting the First Amendment and authorizing the Board of Directors to direct funds into an interest-bearing escrow account pending an investigation by the Audit Committee. The critical inquiry is whether the First Amendment's escrow provision "reduced" or "impaired" Koenig's benefits in contravention of the SERP Section 13, which expressly prohibits such amendments.

### 2. Did the First Amendment reduce or impair SERP benefits then currently payable to Koenig?

■ New Waste argues that the First Amendment does not "reduce or impair" Koenig's SERP benefits because the Amendment is designed "to preserve the value of the sum held in escrow." (R. 14, Defs.' Mot. to Dismiss at 21.) In support of this proposition, New Waste cites a series of cases purportedly holding that a delay in payment is not equivalent to a reduction in benefits. *See Spacek v. Maritime Ass'n I L A Pension Plan,* 134 F.3d 283, 288–91 (5th Cir.1998); *Whisman v. Robbins,* 55 F.3d 1140, 1147 (6th Cir.1995); *Khoury v. Cook Associated, Inc.,* No. 94 C 3121, 1995 WL 107159, *8 (N.D.Ill. Mar.1, 1995). These cases, however, are distinguishable from this matter. First, in each of the cases cited by New Waste, the plan administrators had suspended benefits only temporarily, and the benefits were to resume on a specific date. *See, e.g., Spacek,* 134 F.3d at 287 (plan participant's reemployment temporarily suspended

ERISA benefits for six months); *Khoury,* 1995 WL 107159, at *2 (plaintiff-participants unable to receive vested benefits until 65th birthday due to their violation of a noncompete clause). In contrast, New Waste has indefinitely delayed payment of Koenig's SERP benefits.

In addition, each of these cases involve plan amendments that eliminate or reduce retirement benefits under standard welfare benefits plans that are governed by ERISA generally. However, the present case involves a top hat plan that is not subject to ERISA's substantive provisions. *In re New Valley,* 89 F.3d at 148–51. As such, the cases cited by New Waste offer little guidance in the present matter.

Koenig adequately alleges that New Waste has reduced or impaired his SERP benefits because he does not now, and never will, have control over the benefits. (R. 11, Pl.'s Am.Compl. ¶¶ 39, 45.) Therefore, New Waste's motion to dismiss Koenig's breach of contract claim is denied.

### D. Breach of Contract (Section 14 of the SERP)

██ Section 14(a) of the SERP (the "Spendthrift Provision") states:

*No interest of any person or entity in, or right to receive a benefit under the Plan shall be subject in any manner to* sale, transfer, assignment, pledge, attachment, garnishment, *or other alienation or encumbrance of any kind;* nor may such interest or right to receive a benefit be taken either voluntarily or involuntarily, for the satisfaction of the debts of, or other obligations or claims against, such person or entity, including claims for alimony, support, separate maintenance and claims in bankruptcy proceedings.

(R. 11, Pl.'s Amend.Comp., Ex. A, SERP at Section 14 (emphasis added).) Koenig asserts that the First Amendment's escrow account provision operates to deny him access to his SERP benefits and therefore constitutes an "alienation or encumbrance" in violation of SERP Section 14.

In response, New Waste argues that the escrow account provision "only applies to an interest in or right to receive SERP benefits," and therefore does not violate the SERP's spendthrift provision. (R. 14, Defs.' Mot. to Dismiss at 22.) New Waste asserts that the issue before the Court is "whether Mr. Koenig was entitled to SERP benefits in the first instance." (*Id.* at 23.) As explained above, top hat plans are treated as unilateral contracts accepted by performance. Thus, Koenig has stated a claim that his benefits had vested and were protected by the SERP's spendthrift provision. *See In re New Valley,* 89 F.3d at 150–51. Consequently, New Waste's motion to dismiss Count II is denied.

### E. Estoppel

Koenig next argues that New Waste is estopped from withholding his SERP benefits due to statements printed in both the Prospectus/Joint Proxy Statement and the Merger Agreement that preceded the merger between Old Waste and USA. Here, Koenig alleges that the Proxy Statement/Prospectus was misleading in stating:

The current or former executive officers who are participants in the SERP will receive service credit for additional years of service over their severance periods ... and become vested in any benefits accrued thereunder. Additionally, the Merger Agreement provides that the SERP will be terminated at or prior to the closing of the Merger and *all accrued benefits will be paid to participants in a lump sum.*

(R. 11, Pl.'s Am.Compl., Ex. D, Joint Proxy Statement at 47 (emphasis added).) Moreover, Koenig was listed as an eligible SERP recipient in the Prospectus.

██ Estoppel claims are permitted under ERISA only in narrow situations. *Black v. TIC Investment Corp.,* 900 F.2d 112, 113 (7th Cir.1990). The Seventh Circuit has yet to consider an estoppel claim in the context of a top hat plan. Other

circuits, however, apply the same estoppel standards governing ERISA welfare benefit plans generally to top hat plans. *In re New Valley*, 89 F.3d at 153. In this Circuit, an estoppel claim under ERISA "has four elements: (1) a knowing misrepresentation; (2) made in writing; (3) with reasonable reliance on that misrepresentation by the plaintiff; (4) to her detriment." [2] *Coker v. Trans World Airlines, Inc.*, 165 F.3d 579, 585 (7th Cir.1999).

▪ In the present case, Koenig has adequately pled a written, knowing misrepresentation. Koenig alleges that the Proxy Statement/Prospectus misleadingly stated that he was an eligible SERP recipient and thus would receive a lump sum payment upon the effective date of the merger.[3] Obviously, Koenig never received such a payment.

New Waste argues that the statements on which Koenig relies concerned "potential" benefits that "*may* be paid, vested or accelerated as a result of the merger." (R. 11, Pl.'s Am.Compl., Ex. D, Joint Proxy Statement at 47 (emphasis added).) However, a "plan should be construed as a whole, and the specific language of each provision should be interpreted in the context of the whole." *Carr v. First Nationwide Bank*, 816 F.Supp. 1476, 1493 (N.D.Cal.1993). The statement that SERP benefits "*may* be paid, vested or accelerated as a result of the Merger" anticipates that payment is contingent upon the final merger between Old Waste and USA. Once that event occurred, SERP beneficiaries should have received lump sum payments of their benefits.

New Waste also relies on a footnote in the Joint Proxy Statement, which states that information in the statement "*may be subject to change.*" (R. 14, Defs.' Mot. to Dismiss at 25 (emphasis in original).) However, the words "which may be subject to change" clearly refer to the actuarial assumptions used to calculate SERP benefits and not to the fact that Old Waste executives would receive lump sum payments. Consequently, Koenig has adequately pled a knowing, written misrepresentation.

Next, Koenig alleges that he relied on New Waste's misrepresentations. Specifically, Koenig alleges that he executed financial planning decisions based upon information contained in both the Joint Proxy Statement and Merger Agreement. Koenig also adequately alleges that his reliance was detrimental. The Amended Complaint specifically states he "has been damaged by [D]efendants' conduct." (R. 11, Pl.'s Am.Compl. ¶ 62.) Koenig has adequately alleged an estoppel claim, and New Waste's motion to dismiss is denied.

**F. Breach of Employment Agreement**

▪ Finally, Koenig claims that New Waste breached his Employment Agreement by failing to award him "stock options and incentive compensation and/or bonuses in 1998, and by not granting him incentive compensation and/or bonuses in 1997." (R. 11, Pl.'s Am.Compl. at ¶ 66.) In response, New Waste argues that (1) Koenig's Amended Complaint "fails to allege that the Company failed to act in good faith," (R. 14, Defs.' Mot. to Dismiss at 27), and (2) Koenig was not entitled to stock

---

**2.** Although Seventh Circuit cases differ on the number of factors necessary to state an estoppel claim, the analysis is the same. *Compare Black*, 900 F.2d at 115 (emphasizing two factors: "An estoppel arises when one party has made a misleading representation to another party and the other has reasonably relied to his detriment on that representation."), *with Miller v. Taylor Insulation Co.*, 39 F.3d 755, 759 (7th Cir.1994) (emphasizing three factors: a promise, detrimental reliance, and reasonableness).

**3.** The Merger Agreement between Old Waste and USA also stated that the Company planned to terminate the SERP and that "all benefits thereunder *shall be fully vested and paid out* on a present value basis, using the actuarial assumptions applicable to lump sum payments ... effective as of the date of termination of the SERP." (R. 11, Pl.'s Am. Compl., Ex. C, Merger Agreement at A–32 (emphasis added).)

options under the Employment Agreement. However, Koenig's claim is not limited solely to stock options, and it does not rest on the notion that New Waste acted in "bad faith." Consequently, New Waste has failed to address adequately the allegations presented in Koenig's amended complaint, and the motion to dismiss Count IV is denied.

## CONCLUSION

For these reasons, we deny the defendants' motion to dismiss. (R. 14–1.) The parties are directed, once again, to fully exhaust all remaining settlement possibilities for this lawsuit before proceeding with discovery. All discovery must be concluded on or before March 31, 2000. A firm trial date will be set at the next status hearing on December 28, 1999 at 9:45 a.m.