**TEAMSTERS & EMPLOYERS WELFARE TRUST OF ILLINOIS, Plaintiff,**

v.

**GORMAN BROTHERS READY MIX, Defendant.**

No. 99–3059.

United States District Court, C.D. Illinois, Springfield Division.

April 17, 2001.

Patrick J. O'Hara, Cavanagh & O'Hara, Springfield, IL, for Plaintiff.

Lee W. Barron, Alton, IL, for Defendant.

## *OPINION*

RICHARD MILLS, District Judge.

This is in fact the nature of the equitable; it is a rectification of law where it fails through generality.

ARISTOTLE, THE NICOMACHEAN ETHICS OF ARISTOTLE, Bk. 5, XIV, p. 172 (J.E.C. Weldon trans., Macmillan and Co., Ltd.)(1930).

## I. FINDINGS OF FACT [1]

Gorman Brothers Ready Mix ("Gorman Brothers") is a small, multi-purpose business located in Jerseyville, Illinois. Gorman Brothers provides a variety of services in the Jerseyville area, including excavation work, sewage system installation, pre-cast work, demolition work, road construction, and (most important for purposes of this case) Ready Mix concrete services. Gorman Brothers is an employer engaged in an industry affecting interstate commerce within the meaning of the Employee Retirement Income Security Act ("ERISA") and employs individuals who were and are members of the Teamsters, Chauffeurs and Helpers Local Union No. 525 ("the Union"). 29 U.S.C. § 1002(5), (11), (12), & (14).

Since 1980, Gorman Brothers has been managed by Eric Leonhardt.[2]

On May 1, 1991,[3] Gorman Brothers entered into a collective bargaining agreement with the Union.[4] Gorman Brothers subsequently entered into collective bargaining agreements with the Union on July 1, 1994, and, again, on June 23, 1996.[5] All three of these collective bargaining agreements required Gorman Brothers to make fringe benefit contributions on behalf of its employees to the Teamsters & Employers Welfare Trust of Illinois ("the Trust Fund").[6]

However, Gorman Brothers did not have to make contributions to the Trust Fund for all of its employees; rather, Gorman Brothers only had to make contributions for its employees who were performing work covered by the collective bargaining agreements. For all intents and purposes, "covered work" was driving a Ready Mix concrete truck. Thus, Gorman Brothers did not have to make contributions to the Trust Fund for its secretarial help or for its employees who worked exclusively at installing sewer systems, performing demolition work, etc.

Nevertheless, the collective bargaining agreements were worded very broadly in

---

**1.** The Court makes these findings of fact after having conducted a one day bench trial.

**2.** Leonhardt joined Gorman Brothers in 1971 when his father-in-law, Louis Gorman, asked him if he would manage an asphalt plant for Gorman Brothers. When Louis Gorman passed away in 1980, "the baton was passed to" Leonhardt to run the company.

**3.** Although not signed until October 3, 1991, the effective date of the agreement was May 1, 1991.

**4.** Although this was the first collective bargaining agreement entered into by Leonhardt on behalf of Gorman Brothers, Gorman Brothers had been entering into these types of collective bargaining agreements with the Union since at least the 1970's.

**5.** The first agreement covered the time period from May 1, 1991, to May 1, 1994; the second agreement covered the time period from May 1, 1994, to May 1, 1997; and the third agreement covered the time period from May 1, 1997, to May 1, 2000.

**6.** The Trust Fund is administered pursuant to the terms and provisions of the Agreement and Declaration of Trust and pursuant to the Labor Management Relations Act and ERISA. Gorman Brothers was bound to the terms and provisions of the Agreement and Declaration of Trust *via* the collective bargaining agreements which it had entered into with the Union.

favor of the Trust Fund. According to the terms of the collective bargaining agreements, if a Gorman Brothers' employee "has worked any portion of a payroll week" performing work covered by the collective bargaining agreements (*i.e.*, driving a Ready Mix truck), then Gorman Brothers was required to contribute to the Trust Fund on behalf of that employee for the entire work week. Thus, for example, if during a regular 40 hour work week a Gorman Brothers' employee worked 39 hours installing a sewer system and worked only one hour driving a Ready Mix truck, Gorman Brothers would be required to contribute to the Trust Fund for that employee for the entire work week.

Despite this language in the collective bargaining agreements, Gorman Brothers did not make contributions to the Trust Fund for all of its employees when its employees performed Ready Mix work; rather, since at least the 1980's, Gorman Brothers only made contributions for a maximum of seven of its employees. Gorman Brothers made contributions for these seven employees because the employees were vested in the Trust Fund's pension plan and/or because these seven employees received their health insurance benefits through the Trust Fund. At no time, however, did Gorman Brothers make contributions to the Trust Fund for any of its other employees, regardless of whether or not they had driven a Ready Mix truck during any portion of the work week.

In the early 1990's, the Trust Fund initiated an audit of Gorman Brothers ("the first audit"). However, no one knows the whereabouts of the audit, whether it was completed, or what the audit revealed. According to Dale Stewart, who is currently the secretary/treasurer/ business representative of the Union and who is also currently the chairman of the Trust Fund, he informed the auditor that Gorman Brothers was only required to make contributions to the Trust Fund for employees who were performing work covered by the collective bargaining agreement (*i.e.*, driving Ready Mix trucks). Other than this conversation with the auditor, Stewart said that he does not have any information regarding the audit and that he does not know what happened to the audit.

Conversely, Leonhardt testified that he knows exactly what happened to the audit: Stewart made it go away. According to Leonhardt, Stewart told him that he [Stewart] did Gorman Brothers a favor and "made the audit go away." Because (at least in part) Stewart had quashed the audit, Leonhardt signed the collective bargaining agreements with the Union on July 1, 1994, and on June 23, 1996.

Moreover, Leonhardt explained that Gorman Brothers could not financially make contributions to the Trust Fund as required under the collective bargaining agreements and remain solvent. Therefore, Leonhardt testified that he advised Stewart that Gorman Brothers was only going to make contributions to the Trust Fund for its employees who were vested in the Trust Fund's pension plan and/or maintained their health insurance through the Trust Fund but for no one else. Stewart denies that either of these conversations ever occurred or that he made the audit "go away."

After receiving some complaints from employees of Gorman Brothers' competitors that non-union members were driving Ready Mix trucks for Gorman Brothers, the Trust Fund initiated a second audit of Gorman Brothers in December 1998. This audit, performed by Michael Cox, revealed that Gorman Brothers was not making contributions to the Trust Fund for its employees who were performing Ready Mix work as required under the collective bargaining agreements. Specifically, the audit indicated that Gorman Brothers

owed the Trust Fund $151,965.70 in delinquent contributions for the months of May 1992 through September 1998.[7] Accordingly, the Trust Fund filed the instant case pursuant to ERISA § 515 ( 29 U.S.C. § 1145) seeking the $151,965.70 in delinquent contributions as well as liquidated damages in the amount of $15,196.50, interest on the delinquent contributions in the amount of $27,353.82, audit fees in the amount of $617.50, and costs and attorney's fees in the amount of $8,802.25, for a total of $203,318.27.

## II. CONCLUSIONS OF LAW

### A. PRIMA FACIE CASE

■ ERISA § 515 provides:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. In order to prevail on an ERISA § 515 cause of action, a trust fund must prove that "(1) it is a multiemployer plan as defined by section 3(1) of ERISA, 29 U.S.C. § 1002(37)(A); (2) defendant is an employer obligated to pay contributions under the terms of the plan; and (3) defendant failed to pay contributions in accordance with the terms of the plan." *National Boilermaker Indus. Health and Welfare Joint Trust v. Servcote, Inc.*, 1997 WL 106107, * 3 (N.D.Ill. Feb.11, 1997).[8]

In the instant case, Gorman Brothers conceded at the final pretrial conference and again during the bench trial that the Trust Fund has established its *prima facie* case for the collection of delinquent contributions under ERISA § 515. Specifically, Gorman Brothers admitted that the Trust Fund is a multiemployer plan as defined by ERISA § 3(1), that it is obligated to make contributions to the Trust Fund pursuant to the three collective bargaining agreements which it entered into with the Union (and pursuant to the trust agreement), and that it failed to make those contributions.

### B. EQUITABLE DEFENSES

■ Nevertheless, Gorman Brothers argues that the Court should not enter judgment in the Trust Fund's favor because the Trust Fund's action is barred by one of its four asserted affirmative defenses. Specifically, Gorman Brothers contends that the Trust Fund's recovery is barred by the affirmative defense of fraud in the inducement,[9] unjust enrichment, equitable estoppel, and/or laches.[10] Gorman broth-

---

7. The audit actually established Gorman Brothers' liability to the Trust Fund to be $173,968.70. However, during the trial, Cox admitted that he erroneously attributed delinquent contributions for the work performed by Howard Marshall. Marshall was a mechanic who did not perform Ready Mix work, and therefore, Gorman Brothers was not required to make contributions to the Trust Fund for him.

8. A multiemployer pension plan is a plan: "(i) to which more than one employer is required to contribute, (ii) which is maintained pursuant to one or more collective bargaining agreements between one or more employee organizations and more than one employer,

and (iii) which satisfies such other requirements as the Secretary may prescribe by regulation." 29 U.S.C. § 1002(37)(A).

9. Although Gorman Brothers did not address this affirmative defense in its post-trial brief, it did list the affirmative defense in its Answer, and its counsel indicated at the bench trial that Gorman Brothers wanted to pursue this defense. Accordingly, the Court will address the merits of Gorman Brothers' affirmative defense of fraud in the inducement.

10. Although Gorman Brothers listed waiver as an affirmative defense in its Answer, it did not address this defense in its post-trial brief

ers asserts that the Trust Fund, through Stewart, fraudulently induced it to enter into the collective bargaining agreements with the Union by fraudulently representing that it would not be required to make contributions to the Trust Fund for all of its employees who performed covered work. In addition, Gorman Brothers asserts that, because none of its employees ever have or ever will make a claim for benefits from the Trust Fund, the Trust Fund would be unjustly enriched if it is required to pay the delinquent contributions which the Trust Fund seeks from it.

Furthermore, Gorman Brothers argues that the Trust Fund is equitably estopped from recovering the delinquent contributions because the Trust Fund, *via* Stewart, represented that it was only required to make contributions for a select few of its employees and has, through a course of dealing over the years, accepted contributions on behalf of only a few of its employees. Finally, Gorman Brothers claims that laches bars the Trust Fund's recovery be-

cause the Trust Fund did not complete an audit of it sooner.[11]

■ As a general rule, an employer who is obligated to make contributions to a pension or welfare trust fund pursuant to the terms of a collective bargaining agreement may not assert contractual or equitable affirmative defenses pertaining to the formation of the collective bargaining agreement or to the union's conduct in an action by the trust fund to collect delinquent contributions. *Robbins v. Lynch,* 836 F.2d 330, 333–34 (7th Cir.1988); *Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Serv., Inc.,* 870 F.2d 1148, 1153 (7th Cir.1989); *Central States, Southeast and Southwest Areas Pension Fund v. Joe McClelland, Inc.,* 23 F.3d 1256, 1258 (7th Cir.1994).

Despite the fact that pension and welfare funds are, technically, third-party beneficiaries of the collective bargaining agreements between employers and unions, and despite the fact that third-party

---

or during the bench trial. Accordingly, the Court finds no evidence to support Gorman Brothers' affirmative defense of waiver. Furthermore, in its post-trial brief, Gorman Brothers raised, for the first time, the affirmative defense of course of dealing. " 'As a general matter, ... failure to plead an affirmative defense results in a waiver of that defense. But when parties argue an affirmative defense in the district court, technical failure to plead the defense is not fatal.' " *Dresser Indus., Inc. v. Pyrrhus, AG,* 936 F.2d 921, 928 (7th Cir.1991), quoting *De Valk Lincoln Mercury, Inc. v. Ford Motor Co.,* 811 F.2d 326, 334 (7th Cir.1987) (internal citations omitted). Here, allowing Gorman Brothers to assert the affirmative defense of course of dealing would result in unfair surprise to the Trust Fund because the Trust Fund has not had an opportunity to respond to the affirmative defense—Gorman Brothers raised the affirmative defense for the first time in its post-trial brief which was due simultaneously with the Trust Fund's post-trial brief. *See Bull's Corner Restaurant, Inc. v. Director of Fed. Emergency Mgmt. Agency,* 759 F.2d 500, 502

(5th Cir.1985) (citations omitted and holding that "[w]here [an affirmative defense] is raised in the trial court in a manner that does not result in unfair surprise, ... technical failure to comply precisely with Rule 8(c) is not fatal."). Thus, the Court will not consider course of dealing as a separate affirmative defense; it will, however, consider it to the extent it is applicable and overlaps with Gorman Brothers' other asserted affirmative defenses. In any event, course of dealing, itself, would not operate to bar the Trust Fund's recovery in this case. *See Central States, Southeast and Southwest Areas Pension Fund v. Heineman Distrib., Inc.,* 1994 WL 496730, * 3 (N.D.Ill. Sept.9, 1994)(holding that a course of dealing for 40 years which is unsupported by written materials would not bar a trust fund's suit for the recovery of delinquent contributions).

11. Gorman Brothers bears the burden of proving their affirmative defenses by a preponderance of the evidence. *Weir v. Crown Equip. Corp.,* 217 F.3d 453, 466 (7th Cir.2000)(Ripple, J., dissenting).

beneficiaries, generally, must accept contracts as they find them, collective bargaining agreements are not treated as typical third-party beneficiary contracts. *See Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 467, 80 S.Ct. 489, 4 L.Ed.2d 442 (1960)(holding that "parties to a collective bargaining agreement must express their meaning in unequivocal words before they can be said to have agreed that the union's breaches of its promises should give rise to defense against the duty assumed by an employer to contribute to a welfare fund...."). Collective bargaining agreements are treated differently because the benefits to workers of protecting pension and welfare funds from employers' assertions of equitable and contractual defenses outweigh the costs to employers of enforcing even fraudulently obtained collective bargaining agreements. Central States, Southeast and Southwest Areas Pension Fund v. *Gerber Truck*, 870 F.2d at 1150, 1153. Trust funds rely upon documents—specifically collective bargaining—agreements in calculating the amount of contributions which they will receive and the amount of benefits which they can pay to plan participants. *Id.* at 1150. Once the trust fund establishes the level of benefits available to plan participants, the amount cannot be reduced, regardless of whether or not the trust fund actually receives the full amount of the expected contributions. *Id.* Accordingly, if employers could escape their contribution obligations by asserting equitable and/or contractual defenses, or if trust funds could only secure contributions through time consuming and costly litigation, the trust funds would either be financially unable to meet their obligations or would be forced to lower benefits to plan participants and/or increase the amount of contributions from employers. *Id.* at 1152.

Recognizing this dilemma, Congress enacted ERISA § 515, thereby placing the burden of care on the employers to avoid problems in the formation of collective bargaining agreements and limiting employers' ability to escape the duty to make contributions under the collective bargaining agreements. *Id.* at 1153; 29 U.S.C. § 1145; *Joe McClelland*, 23 F.3d at 1259. In fact, Congress specifically added § 515 to ERISA in order to "simplify delinquency collection" by freeing trust funds from defenses that pertain to the union's conduct. *Robbins*, 836 F.2d at 333, quoting Senate Committee on Labor & Human Resources, S. 1076—The Multi-employer Pension Plan Amendments of 1980: Summary and Analysis of Consideration, 96th Cong., 2d Sess. 43–44 (April 1980); *Gerber Truck*, 870 F.2d at 1152–53. Thus, the United States Court of Appeals for the Seventh Circuit has interpreted ERISA § 515 as limiting an employer's ability to assert contractual and equitable defenses:

> If the employer simply points to a defect in its formation—such as fraud in the inducement, oral promises to disregard the text, or the lack of majority support for the union and the consequent ineffectiveness of the pact under labor law—it must still keep its promise to the pension plans.

*Gerber Truck*, 870 F.2d at 1153; *Joe McClelland*, 23 F.3d at 1257–58.

Nevertheless, the Seventh Circuit has recognized that certain defenses may, in narrow situations, be asserted by an employer to an action by a trust fund to collect delinquent contributions owed by an employer pursuant to a collective bargaining agreement. *See Black v. TIC Inv. Corp.*, 900 F.2d 112, 113 (7th Cir.1990)(allowing an estoppel claim in the context of an unfunded single-employer welfare benefit plan); *see also Mason & Dixon Lines, Inc. v. Glover*, 975 F.2d 1298, 1303–05 (7th Cir.1992)(considering an estoppel claim brought against a trust fund based upon the trustees' alleged breach of an oral agreement to settle a withdrawal liability

suit); *see also Koenig v. Waste Mgmt., Inc.,* 76 F.Supp.2d 908, 915 (N.D.Ill.1999)(allowing an estoppel claim in the context of a top hat plan); *see also Pattern Makers' Pension Trust Fund v. Production Pattern Shop, Inc.,* 1998 WL 173299, * 2 (N.D.Ill. April 7, 1998)(holding that "the law of this circuit does not bar the estoppel defense" against a multi-employer fund suing for contributions from an employer). For example, in *Illinois Conference of Teamsters and Employers Welfare Fund v. Mrowicki,* 44 F.3d 451 (7th Cir.1994), the Seventh Circuit implicitly approved of the defense of equitable estoppel in and ERISA § 515 suit for delinquent contributions. *Id.* at 462–64. In *Mrowicki,* an employer refused to make contributions to a trust fund, as required under a collective bargaining agreement, on behalf of certain employees; when the trust fund sued for the delinquent contributions, the employer asserted equitable estoppel based upon certain representations which the trust fund's trustees had made to him. *Id.* Although the employer's defense ultimately failed, its failure was due to the employer's inability to prove equitable estoppel, not because the defense was unavailable to him. *Id.*

Upon this backdrop, the Court will consider Gorman Brothers' equitable defenses.

### 1. *Fraud in the Inducement*

■ The Court finds that the Trust Fund's recovery of delinquent contributions owed by Gorman Brothers pursuant to the three collective bargaining agreements is not barred by the equitable defense of fraud in the inducement. *First,* fraud in the inducement is one of the defenses specifically referenced by the Seventh Circuit as being unavailable to an employer in an ERISA § 515 action brought by a trust fund for the recovery of delinquent contributions owed under a collective bargaining agreement. *See Gerber*

*Truck,* 870 F.2d at 1153 (holding that "[i]f the employer simply points to a defect in its [the collective bargaining agreement's] formation ... it [the employer] must still keep its promise to the pension plans."); *see also Central States, Southeast and Southwest Areas Pension Fund v. Transport, Inc.,* 183 F.3d 623, 627–26 (7th Cir.1999)(holding that "[e]mployers may not assert traditional contract defenses, such as fraud in the inducement.... Despite any defects in the formation of the contract, we held that the employer must still keep its promise to the pension plans.").

■ *Second,* even if this defense were available, Gorman Brothers has failed to prove fraud in the inducement. In order to establish the defense of fraud in the inducement, a defendant must show by clear and convincing evidence: " '(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance.' " *Havoco of Am., Ltd. v. Sumitomo Corp. of Am.,* 971 F.2d 1332, 1341 (7th Cir.1992), quoting *Cotter v. Parrish,* 166 Ill.App.3d 836, 841, 520 N.E.2d 1172, 1175, 117 Ill.Dec. 821, 824 (Ill.App.Ct.1988).

■ Here, Gorman Brothers has failed to present any evidence that the Trust Fund or any of its agents made a false statement of a material fact known or believed to be false by the person making it. The only reference during the bench trial to a false statement being made was when Leonhardt testified that no false statements were made:

Q. Mr. Leonhardt, can you indicate whether or not you are aware that Mr. Stewart ever told you anything false during that conversation?

A. Not that I'm aware of, no.

Q. Do you know during any conversation whether Mr. Stewart told you a falsehood?

A. I've always felt Dale was a pretty straight shooter.

Accordingly, even if fraud in the inducement were a viable defense in this case, Gorman Brothers has failed to establish it.

### 2. *Unjust Enrichment*

■ Likewise, the Court finds that unjust enrichment is not available as a defense to an employer to a suit brought by a trust fund to collect delinquent contributions pursuant to a collective bargaining agreement. In order to recover or bar recovery under a theory of unjust enrichment, a party must establish that his opponent has unjustly retained a benefit to that party's detriment and that the retention of that benefit violates the fundamental principles of justice, equity, and good conscience. *Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 436 (7th Cir. 1996).

In *Central States, Southeast and Southwest Areas Pension Fund v. Bellmont Trucking Co., Inc.*, 788 F.2d 428 (7th Cir. 1986), the Seventh Circuit held that the equitable theory of unjust enrichment is not a defense to the operation of the Multi Employer Pension Plan Amendments Act of 1980 ("the MPPAA") which amended ERISA. *Id.* at 434. The MPPAA "arose out of Congress' fear that any time an employer withdrew from a multiemployer pension plan (MPP) under ERISA it could set off a domino effect that, 'much like a bank run,' could leave the MPP unable to pay its vested obligations." *Central States, Southeast and Southwest Areas Pension Fund v. Hunt Truck Lines, Inc.*, 204 F.3d 736, 739 (7th Cir.2000), quoting *Artistic Carton Co. v. Paper Indus. Union–Mgmt Pension Fund*, 971 F.2d 1346, 1348 (7th Cir.1992). It stands to reason that, if unjust enrichment cannot be asserted as a defense to a suit brought under ERISA's amendments, it cannot be asserted as a defense to a suit brought under ERISA itself.

In any event, the Seventh Circuit has expressly rejected Gorman Brothers' argument that to allow the Trust Fund to recover delinquent contributions from it would result in a windfall to the Trust Fund because none of its employees ever have or ever will make a claim for benefits from the Trust Fund. In *Joe McClelland*, the Seventh Circuit opined:

> This misunderstands the nature of multi-employer, defined-benefit plans. The actuarial assumptions on which these plans are constructed assume that for many, perhaps a majority, of employees on whose behalf contributions are made, the plan will not make payments. Some will leave the industry before their benefits vest, and others will die before receiving benefits equal to the value of the contributions made.... Thus the Fund's injury is precisely that it did not receive contributions on behalf of persons who might never receive benefits.

*Joe McClelland*, 23 F.3d at 1257–58; *see Central Pennsylvania Teamsters Pension Fund v. McCormick Dray Line, Inc.*, 85 F.3d 1098, 1109 (3d Cir.1996)(holding that "[a] benefit payment is made for coverage in case a claim is submitted. As such, a lack of actual claims is irrelevant."); *see also Amalgamated Cotton Garment & Allied Indus. Retirement Fund v. Youngworld Stores Group, Inc.*, 2001 WL 314650, * 5 (S.D.N.Y. Mar.30, 2001)(noting that the Second Circuit does not recognize unjust enrichment as a defense by an employer to a trust fund's suit for delinquent contributions). Accordingly, Gorman Brothers' unjust enrichment claim must fail because it is not available as a defense in this case.

### 3. *Equitable Estoppel*

As noted *supra*, the Seventh Circuit has only implicitly recognized equitable estoppel as a viable defense by an employer to a suit brought by a multi-employer trust fund seeking delinquent contributions pursuant to ERISA § 515 and owed under a collective bargaining agreement. *Mrowicki*, 44 F.3d at 462–64; *see Black*, 900 F.2d at 113 (recognizing equitable estoppel in the context of an unfunded *single*-employer welfare benefit plan); *but see Pattern Makers' Pension Trust Fund*, 1998 WL 173299, * 2 (noting that the Seventh Circuit does not bar the estoppel defense against a *multi*-employer fund suing for contributions from an employer). However, the Court need not decide whether equitable estoppel is available to Gorman Brothers because, even assuming that the defense is available, Gorman Brothers has failed to establish equitable estoppel.

▇▇▇▇ In order to establish equitable estoppel, a defendant must show: "(1) a knowing representation, (2) made in writing, (3) with reasonable reliance on that misrepresentation by the plaintiff, (4) to her detriment." *Trustmark Life Ins. Co. v. University of Chicago Hosps.*, 207 F.3d 876, 883 (7th Cir.2000), citing *Coker v. Trans World Airlines, Inc.*, 165 F.3d 579, 585 (7th Cir.1999); *see Downs v. World Color Press*, 214 F.3d 802, 805 (7th Cir. 2000)(same). Here, Gorman Brothers has wholly failed to offer any evidence that the Trust Fund or any of its agents made a knowing misrepresentation to it in writing. The only representation upon which Gorman Brothers relies in support of its equitable estoppel defense is that Stewart told Leonhardt that he [Stewart] made the audit "go away." [12] Because this representation was not made in writing, Gorman Brothers cannot establish equitable estoppel.[13] *Joe McClelland*, 23 F.3d at 1258.

Furthermore, even if the representation had been made in writing, Gorman Brothers has failed to establish that it reasonably relied upon any misrepresentation made by the Trust Fund. During the trial, Leonhardt testified:

Q. Is it your understanding that an audit is for the purpose of confirming certain figures, numbers, what have you?

A. Certainly.

Q. Certain information and data?

A. Yes.

Q. Now, you understand that the—that your liability with regard to a transaction emanates from the contract. Is that your understanding?

A. That's the way it is in the real world.

Q. And the liability doesn't arise from the audit. The audit is just to find out the data. You understand that, don't you?

A. Certainly.

---

**12.** In its post-trial brief, Gorman Brothers asserts that the Trust Fund "clearly communicated to the defendant/employer that the Trust Fund would not enforce the language of the Trust." Although Leonhardt testified that he told Stewart and the Union's assistant business representative, James Caffrey, that Gorman Brothers was only going to make contributions to the Trust Fund on a few of its employees, Gorman Brothers has not offered any *written* evidence, either at trial or post-trial, to support this allegation

**13.** The Seventh Circuit has oft times noted the rule proscribing oral modification of an ERISA plan. *E.g., Pohl v. National Benefits Consultants, Inc.*, 956 F.2d 126, 128 (7th Cir.1992)(holding that "[o]ne of ERISA's purposes is to protect the financial integrity of pension and welfare plans by confining benefits to the terms of the plans as written, thus ruling out oral modifications"). Moreover, the collective bargaining agreements at issue require written notification prior to any modification(s) being made.

Q. And no one ever informed you that somehow they're making the collective bargaining agreements go away, did they?

A. No one ever said that, no.

Thus, the evidence presented at trial revealed that the Trust Fund did not make a misrepresentation to Gorman Brothers upon which it could reasonably rely with respect to its liability under the collective bargaining agreements. In fact, Leonhardt testified that he knew that Gorman Brothers was not fulfilling its obligations to make contributions to the Trust Fund pursuant to the collective bargaining agreements:

Q. How did you feel about having to sign those—or, having those union contracts being signed?

A. I didn't like it.

Q. Why?

A. I didn't—because I knew we weren't living up to the letter of the law.

See Central States, Southeast and Southwest Areas Pension Fund v. Kroger Co., 226 F.3d 903, 914–15 (7th Cir.2000), amended by Central States, Southeast and Southwest Areas Pension Fund v. Kroger Co., 241 F.3d 842 (7th Cir.2001)(rejecting an employer's estoppel argument because the employer's reliance on any misrepresentation made by the trust fund could not have been reasonable); see also Trustees of the Michigan Laborers' Health Care Fund v. Gibbons, 209 F.3d 587, 592 (6th Cir.2000)(holding that an employer had no right to believe that it would be excused from making further contributions to the fund based upon an auditor's conduct). Accordingly, assuming that equitable estoppel is a viable defense in this case, the Court finds that Gorman Brothers has failed to establish it.

### 4. Laches

Finally, as with the equitable estoppel defense, the Seventh Circuit has, at least inferentially, indicated that laches is available in an ERISA suit. See Martin v. Consultants & Admins., Inc., 966 F.2d 1078, 1091 (7th Cir.1992)("hesitat[ing] to declare that laches can never be applied against the government in an ERISA case simply because Congress has codified a statute of limitations."); see also UIU Severance Pay Trust Fund v. Local Union No. 18–U, United Steelworkers of Am., 998 F.2d 509, 513 (7th Cir.1993)(noting, without deciding, that laches may bar recovery in an action regarding contributions to a trust fund). Other courts, however, have specifically considered the doctrine of laches in an ERISA § 515 suit for delinquent contributions. See Brown–Graves Co. v. Central States, Southeast and Southwest Areas Pension Fund, 206 F.3d 680, 684 (6th Cir.2000)(considering laches in a case brought by an employer seeking a declaratory judgment that it was not required to make contributions to a trust fund); see also Trustees of Wyoming Laborers Health and Welfare Plan v. Morgen & Oswood Constr. Co., 850 F.2d 613, 624 (10th Cir.1988) and Trustees of Colorado Statewide Iron Workers Joint Apprenticeship and Training Trust Fund v. A & P Steel, Inc., 812 F.2d 1518, 1528 (10th Cir. 1987)(both considering a laches defense to a claim under ERISA for delinquent contributions by pension funds); see also In re Centric Corp., 901 F.2d 1514, 1519 (10th Cir.1990)(holding that "[t]he defense of laches is available in a suit to collect a claim for withdrawal liability."); see also Iron Workers' Local No. 25 Pension Fund v. Klassic Servs., Inc., 913 F.Supp. 541, 544–46 (E.D.Mich.)(allowing an employer to amend its answer to include laches as a defense to a trust fund's claim of delinquent contributions); see also Oregon Laborers–Employers Trust Funds v. Pacific

*Fence and Wire Co.,* 726 F.Supp. 786, 789 (D.Or.1989)(same). In the instant case, the Court believes that the doctrine of laches is available to Gorman Brothers and that the doctrine of laches operates to bar the Trust Fund's recovery of the delinquent contributions from Gorman Brothers. *See Pattern Makers',* 1998 WL 173299, * 1 (concluding that an employer is not barred from asserting laches against a trust fund seeking delinquent contributions pursuant to ERISA § 515).

In order to establish laches, the party asserting the doctrine must show (1) unreasonable delay and (2) harm or prejudice to the party against which laches has been asserted. *Martin,* 966 F.2d at 1091; *see Maksym v. Loesch,* 937 F.2d 1237, 1248 (7th Cir.1991)(same). Here, Gorman Brothers has established both elements. *First,* the evidence indicated that the Trust Fund unreasonably delayed before taking action with regard to the delinquent contributions owed to it by Gorman Brothers after conducting the first audit. *Second,* because of the Trust Fund's unreasonable delay, Gorman Brothers suffered prejudice in that it subsequently entered into collective bargaining agreements with the Union which required Gorman Brothers to make contributions to the Trust Fund-collective bargaining agreements which Gorman Brothers would not have entered into had liability for its delinquent contributions been established and timely sought after the Trust Fund conducted the first audit.

In recognizing that equitable defenses may be available to an employer against a trust fund's suit for delinquent contributions, the Seventh Circuit opined:

> The common law of trusts defines the scope of authority and responsibility of plan trustees, and under trust law the exercise of joint powers requires the action of all trustees. *Id.* The trustees may delegate authority to an agent to perform certain acts. *Id.* In addition, an agent may bind his principal through the exercise of apparent authority, which " 'arises when a principal creates, by its words or conduct, the reasonable impression in a third party that the agent has the authority to perform a certain act on its behalf.' " *Id. (quoting Bank of North Carolina, N.A. v. Rock Island Bank,* 630 F.2d 1243, 1251 (7th Cir. 1980)). "Where the principal places an agent in a situation where the agent may be presumed to have authority to act, his principal is estopped against a third party from denying the agent's apparent authority." *Id. (citing Rock Island Bank,* 630 F.2d at 1251). In determining whether apparent authority exists, "courts focus on the acts of the principal." *Id. (citing Rock Island Bank,* 630 F.2d at 1251; *State Security Insurance Co. v. Burgos,* 145 Ill.2d 423, 164 Ill.Dec. 631, 635, 583 N.E.2d 547, 551 (1991)).

*Mrowicki,* 44 F.3d at 463.[14]

In the present case, Stewart admitted that, at the time of the first audit, he was a trustee of the Trust Fund.[15] Stewart also

---

**14.** Although *Mrowicki* dealt with the defense of equitable estoppel, laches is a species of estoppel. *Martin,* 966 F.2d at 1091. Therefore, the Court believes that a discussion of whether Stewart possessed apparent authority to bind the Trust Fund is necessary in determining whether laches bars the Trust Fund's recovery of delinquent contributions from Gorman Brothers.

**15.** Stewart occupied a position which differs from most of the reported cases in which an employer attempts to invoke equitable defenses. Not only was Stewart the Union's representative, he was a trustee of the Trust Fund. *See Pattern Makers',* 1998 WL 173299 at * 2 (noting a distinction where an employer invokes equitable estoppel based upon a union's conduct versus invoking the defense based upon a trustee's conduct).

testified that he described the perimeters within which the audit should be conducted, *i.e.*, he described the type of work which was covered by the collective bargaining agreements and for which Gorman Brothers was required to make contributions to the Trust Fund.

Moreover, Leonhardt testified that he knew that Stewart was a trustee of the Trust Fund at the time of the first audit. He also stated that, had the first audit not "gone away", he would not have entered into subsequent collective bargaining agreements with the Union. Based upon this evidence, the Court believes that Stewart possessed apparent authority to bind the Trust Fund.

Therefore, if Stewart made the audit "go away" as Leonhardt testified, then laches bars the Trust Fund's recovery because the Trust Fund slept upon its rights. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 820 (7th Cir.1999). In the early 1990's, the Trust Fund performed an audit which would have revealed that Gorman Brothers was not living up to its obligations under the collective bargaining agreement. Yet its trustee (*i.e.*, Stewart) quashed the audit, and Gorman Brothers continued to make contributions on a limited basis as it had done for several years, perhaps as far back as the 1950's.

But whether Stewart made the audit go away or not is irrelevant because laches, nonetheless, bars the Trust Fund's recovery of delinquent contributions from Gorman Brothers. Everyone acknowledges that the Trust Fund performed an audit of Gorman Brothers' books in the early 1990's. In addition, neither party tendered any evidence that the audit was lost, stopped, etc., by any action or inaction on the part of Gorman Brothers. Stewart simply testified that after speaking with the auditor, he did not know what happened to the audit. It is clear, however, that the Trust Fund did not take any action to seek delinquent contributions owed to it by Gorman Brothers following the completion of the first audit.

Under either scenario, the Trust Fund failed to timely take corrective action against Gorman Brothers. In fact, the Trust Fund did not complete another audit of Gorman Brothers until December 1998 and did not file this suit until March 1999. By that time, however, Gorman Brothers had entered into two subsequent collective bargaining agreements with the Union and had accumulated over $150,000.00 in delinquent contributions owed to the Trust Fund—an amount which will probably bankrupt Gorman Brothers if it is required to pay the debt. The Court does not believe that such a result would be equitable given the fact that, had the Trust Fund taken appropriate action following the first audit, Gorman Brothers would not have entered into subsequent collective bargaining agreements with the Union, and the amount in delinquent contributions owed to the Trust Fund would not have accumulated to such an enormous sum.

In this regard, the Court finds the case relied upon by the Trust Fund from the Third Circuit to be distinguishable. In *Central Pennsylvania Teamsters Pension Fund v. McCormick Dray Line, Inc.*, 85 F.3d 1098 (3d Cir.1996), the defendant argued that, because the trust fund waited 19 months after conducting an audit before instituting collection procedures, the doctrine of laches operated as a defense to the trust fund's suit for delinquent contributions, liquidated damages, and attorney's fees. *Id.* at 1108. In rejecting this argument, the Third Circuit held:

> McCormick alleges it has been prejudiced because the amount it owes would have been smaller than that now claimed and that McCormick would not be facing liquidated damages, penalties and attorneys' fees. In essence, McCormick asks

this court to assume that it would have behaved differently and actually paid the delinquent amount if it had known that suit would be filed. We have no basis for accepting this claim and we decline to do so.

*Id.* at 1108–09.

The case *sub judice* is factually distinguishable because an audit was performed, but no action was taken by the Trust Fund until the completion of a second audit was performed some six to eight years later. For the same reason, *Central States, Southeast and Southwest Areas Pension Fund v. Heineman Distrib., Inc.*, 1994 WL 496730 (N.D.Ill.Sept.9, 1994), is distinguishable. In *Heineman Distrib.*, the employer asserted laches because an audit was not performed sooner, thereby enhancing the amount of delinquent contributions owed. *Id.* at 1994 WL 496730, * 2. Here, an audit was performed, but the Trust Fund failed to institute collection proceedings until six to eight years later, thereby subjecting Gorman Brothers to extra and unnecessary liability.

It is clear to the Court that, had the Trust Fund completed the first audit, the audit would have revealed that Gorman Brothers owed delinquent contributions to the Trust Fund. In addition, it is clear to the Court that, had the Trust Fund instituted collection proceedings after the completion of the first audit, Gorman Brothers would not have entered into subsequent collective bargaining agreements with the Union and would not have amassed over $150,000.00 in delinquent contributions owed to the Trust Fund.

Accordingly, the Court believes that a take nothing judgment should be entered in favor of Gorman Brothers. Although the Court is confident that Gorman Brothers owed delinquent contributions for some time prior to the first audit, the Trust Fund has not offered any evidence to establish what that amount is. Moreover,

although the second audit establishes Gorman Brothers' liability to the Trust Fund for delinquent contributions owed from May 1992 until September 1998, this suit comes too late following the abandoned first audit to allow the Trust Fund to recover the delinquent contributions which it seeks. The six to eight year time delay between the first audit in the early 1990's and the second audit in December 1998 and, more importantly, the filing of this case in March 1999—was unreasonable, and it prejudiced Gorman Brothers in that the Trust Fund's failure to initiate collection proceedings following the first audit erroneously led Gorman Brothers to believe that it could skirt its obligations under the collective bargaining agreements.

In addition, the Trust Fund's unreasonable delay induced Gorman Brothers to enter into subsequent bargaining agreements with the Union and greatly increased the amount of contributions owed to the Trust Fund. Again, Gorman Brothers would not have owed these contributions to the Trust Fund had the Trust Fund initiated collection proceedings subsequent to the completion of the first audit because, otherwise, Gorman Brothers would not have entered into the subsequent collective bargaining agreements with the Union. Accordingly, the Court finds that the doctrine of laches bars the Trust Fund from recovering delinquent contributions owed by Gorman Brothers which were established *via* the second audit.

*Ergo*, the Court finds that Plaintiff Teamsters & Employers Welfare Trust of Illinois has proven, by a preponderance of the evidence, its claim for delinquent contributions in this case pursuant to ERISA § 515. 29 U.S.C. § 1145.

However, the Court also finds that Defendant Gorman Brothers Ready Mix has proven, by a preponderance of the evi-

dence, the equitable defense of laches, thereby barring Plaintiff Teamsters & Employers Welfare Trust of Illinois' recovery of delinquent contributions from Gorman Brothers Ready Mix.

Accordingly, the Clerk of the Court is DIRECTED to enter a take nothing judgment in favor of Defendant Gorman Brothers Ready Mix and against Teamsters & Employers Welfare Trust of Illinois.