In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3030

Arnold Downs,

Plaintiff-Appellant,

v.

World Color Press,

Defendant-Appellee.


Appeal from the United States District Court
for the Southern District of Illinois, Benton Division.
No. 98 C 4270--J. Phil Gilbert, Chief Judge.


Argued February 16, 2000--Decided May 25, 2000


 Before Kanne, Diane P. Wood and Evans, Circuit
Judges.

 Kanne, Circuit Judge.  Arnold Downs is receiving
the exact level of retirement benefits to which
the express terms of his pension plans entitle
him, but he claims that he deserves more. His
former employer World Color Press apparently told
him in error that he would receive twenty-eight
years of service credit under its ERISA plans,
even though Downs worked only sixteen years for
the company. Downs complains that these
misrepresentations modified one of his ERISA
plans and entitled him to more benefits than
allowed under its express terms. We disagree and
affirm the district court's grant of summary
judgment against Downs.

I.  History

 Arnold Downs worked for the corporate division
of World Color Press ("Corporate Division") in
Effingham, Illinois, from June 1, 1975, to
December 31, 1986. Like most defined-benefit
pension plans under the Employment Retirement
Income Security Act ("ERISA"), 29 U.S.C. sec.sec.
1001-1461, the retirement plan covering Corporate
Division employees ("Corporate Plan") calculates
levels of pension benefits based in part on
length of employment service. Downs received
credit under the Corporate Plan for his eleven
and one-half years of service in the Corporate

Division.

 On January 1, 1987, Downs transferred within World Color Press to the Salem Gravure division ("Salem Division") in Salem, Illinois. Although both the Corporate Division and Salem Division were subunits of World Color Press, each division maintained separate pension plans for its respective employees. Salem Division employees, including Downs as of January 1, 1987, were covered by the Salem Gravure Salaried Pension Plan ("Salem Plan"). Accordingly, Downs stopped receiving service time under the Corporate Plan and began receiving service credit under the Salem Plan for his employment service in the Salem Division.

 In 1989, World Color Press merged the Salem Plan with the retirement plans for a number of other divisions to form a new and distinct pension plan called the Pension Plan for Employees of World Color Press, Inc. ("Merged Plan"). The Merged Plan is a defined-benefit ERISA plan which specifies that a participant can receive service credit only for time employed by one of several enumerated employers. The listed employers under the Merged Plan comprise a number of divisions within World Color Press, including the Salem Division but not the Corporate Division. Consistent with this scheme, Downs received credit under the Merged Plan for his employment service with the Salem Division from January 1, 1987, to his retirement on July 11, 1991. Downs, of course, did not receive credit under the Merged Plan for his tenure in the Corporate Division.

 After he retired, Downs received benefits under the Corporate Plan for his time in the Corporate Division and received benefits under the Merged Plan for his time in the Salem Division. This was the correct result under the express terms of both plans. However, Downs was unhappy because he insisted that World Color Press had promised him retroactive credit under the Merged Plan for his Corporate Division service. In 1994, Downs formally appealed to World Color Press that he should be double credited for his eleven and one-half years in the Corporate Division.

 Downs asserted that World Color Press made a number of oral and written representations to him that he would receive back credit under the Merged Plan for his time in the Corporate Division. Downs alleged that World Color Press Benefits Manager Tom Phillips had assured him on the day of his transfer that his initial date of employment for Salem Division retirement benefits would be June 1, 1975, not January 1, 1987. According to Downs, his supervisor Clayton

Mitchell and General Manager Jack O'Connor also verified this arrangement. In addition, Downs presented benefits paperwork indicating that the employment date for purposes of calculating his Salem Division benefits was June 1, 1975. However, World Color Press explained that if Phillips, Mitchell and O'Connor had promised him double benefits for his time in the Corporate Division, they had done so wrongly and without legal authority. World Color Press also explained that the documentation listing Downs's date of employment as June 1, 1975, was the result of an administrative mistake during the creation of the Merged Plan in 1989. World Color Press rejected his arguments and enforced the express terms of the Merged Plan.

On July 8, 1998, Downs sued World Color Press in Illinois state court under 29 U.S.C. sec. 1132(a)(1)(B) to clarify his rights under the Merged Plan, and World Color Press removed the case to federal district court under 28 U.S.C. sec. 1441 on August 21, 1998. Before the district court, Downs argued that World Color Press's oral and written representations to him amended the Merged Plan and entitled him to double benefits for his time in the Corporate Division. He also argued that World Color Press's oral representations to him estopped World Color Press from enforcing the terms of the Merged Plan. The parties submitted cross-motions for summary judgment, and the district court granted summary judgment in favor of World Color Press on April 1, 1999. Downs filed a motion for reconsideration under Rule 60 of the Federal Rules of Civil Procedure, arguing that the district court failed to address his request for relief. On July 8, 1999, the district court vacated its judgment for World Color Press and entered an amended final judgment for World Color Press specifying Downs's compensation under the Merged Plan.

II.  Analysis

Downs appeals summary judgment and argues that World Color Press's oral and written representations entitled him to additional benefits under the Merged Plan for two reasons: (1) World Color Press's representations amended the Merged Plan; (2) World Color Press is estopped by its representations from enforcing the express terms of the Merged Plan. The district court rejected both arguments and granted summary judgment in favor of World Color Press. We review de novo the district court's grant of summary judgment, drawing our own conclusions of law and fact from the record before us. See Haefling v. United Parcel Serv., 169 F.3d 494, 497 (7th Cir. 1999). In determining whether a genuine issue of material fact exists,

we draw all reasonable factual inferences in favor of the non-movant Downs. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The statements by World Color Press employees and the incorrect date of employment on Downs's benefit papers do not constitute amendment of the Merged Plan. First, oral modification of an ERISA plan is prohibited, so Downs cannot rely on the oral statements to him by Phillips, Mitchell and O'Connor. See Plumb v. Fluid Pump Serv., Inc., 124 F.3d 849, 856 (7th Cir. 1997); Doe v. Blue Cross & Blue Shield United, 112 F.3d 869, 876 (7th Cir. 1997). As we explained in Pohl v. National Benefits Consultants, Inc., 956 F.2d 126, 128 (7th Cir. 1992), "One of ERISA's purposes is to protect the financial integrity of pension and welfare plans by confining benefits to the terms of the plans as written, thus ruling out oral modifications." Second, though written modification of an ERISA plan is permissible, see Doe, 112 F.3d at 876, a plan may be amended only pursuant to its express terms. See 29 U.S.C. sec. 1102(a)-(b); Brewer v. Protexall, Inc., 50 F.3d 453, 457 (7th Cir. 1995). All the written documentation on which Downs relies came subsequent to the Merged Plan's inception, and Section Twelve of the Merged Plan states that World Color Press may amend the plan only "through action of its Board of Directors." Downs cites a number of World Color Press benefits documents listing his employment start date under the Merged Plan as June 1, 1975, but he does not argue, much less establish, that the World Color Press Board of Directors ratified any plan modification that would entitle him to additional benefits.

Furthermore, the representations by World Color that Downs cites do not establish estoppel. For estoppel to apply, the plaintiff must show the following: (1) knowing misrepresentation by the defendant; (2) in writing; (3) with reasonable reliance by the plaintiff on the misrepresentation; (4) to the plaintiff's detriment. See Coker v. Trans World Airlines, 165 F.3d 579, 585 (7th Cir. 1999). Thus, Downs cannot rely on the oral statements by Phillips, Mitchell and O'Connor because the estoppel doctrine does not override the aforementioned rule proscribing oral modification of an ERISA plan. See Coker, 165 F.3d at 585; Frahm v. Equitable Life Assurance Soc'y, 137 F.3d 955, 961 (7th Cir. 1998).

Downs still argues that documents listing his start date as June 1, 1975, were written misrepresentations by World Color Press that support estoppel here. Yet, whether based on oral or written representations, any application of

estoppel to an ERISA plan is problematic in light of the requirements that modification of a plan occur only in writing and through the express procedures for amendment. See 29 U.S.C. sec. 1102(a)(1), (b)(3); see also Shields v. Local 705, Int'l Bhd. of Teamsters Pension Plan, 188 F.3d 895, 903-04 (7th Cir. 1999) (Posner, J., concurring); Health Cost Controls of Ill., Inc. v. Washington, 187 F.3d 703, 711 (7th Cir. 1999); Coker, 165 F.3d at 585. As a result, some circuits refuse any application of estoppel principles to modify an ERISA plan. See, e.g., Miller v. Coastal Corp., 978 F.2d 622, 625 (10th Cir. 1992); Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 58-59 (4th Cir. 1992). In Black v. TIC Investment Corp., 900 F.2d 112, 115 (7th Cir. 1990), we held that estoppel applies to unfunded, single-employer welfare benefit plans, but since Black, we have repeatedly declined to decide whether estoppel might apply to an employer-funded, defined-benefit plan such as we have here. See, e.g., Shields, 188 F.3d at 900; Coker, 165 F.3d at 585-86; Krawczyk v. Harnischfeger Corp., 41 F.3d 276, 280 (7th Cir. 1994). In both Shields and Krawczyk, we explained that it was unnecessary to decide whether to permit estoppel in cases involving employer-funded plans because the plaintiffs had failed to establish the elements of estoppel. Shields, 188 F.3d at 900; Krawczyk, 41 F.3d at 280. Likewise in this case, we again express no opinion whether estoppel may be applied to ERISA plans other than unfunded welfare plans because Downs fails in the first place to establish the elements of estoppel.

In an attempt at showing detrimental reliance, Downs claims that he would not have transferred from the Corporate Division to the Salem Division if he knew that he would not receive double credit for his eleven and one-half years in the Corporate Division. However, Downs could not have relied upon benefits documents wrongly reporting his start date in deciding to transfer because the earliest of these documents are dated March 1989, well after he shifted to the Salem Division in 1987. Even looking past this fact, Downs cannot establish that World Color Press's written misrepresentations were intentional. Although World Color Press might have been negligent in listing the wrong start date on his forms, "[a] claim will not lie for every false statement reasonably and detrimentally relied upon by an unwitting plaintiff." Coker, 165 F.3d at 585. World Color Press explained that the incorrect start date was the result of a clerical error, and Downs does not argue otherwise. We held in Coker that a similar instance of "bureaucratic sloppiness," where the plaintiffs received paperwork and insurance coverage from their employer well after their benefits should have

ended, did not constitute intentional misrepresentation. Id. at 586. Moreover, Downs does not allege that he was harmed by the transfer. Like the plaintiff in Shields, Downs does not claim that he "forwent any other more advantageous job opportunities" or "suffered any detriment" in reliance on his employer's representations. Shields, 188 F.3d at 901. He argues essentially that he should be permitted to double dip by receiving almost twice the retirement benefits to which he is entitled. He insists in his brief that "equity abhors injustice," but this principle works here against Downs, not for him.

III.  Conclusion

For the foregoing reasons, we AFFIRM the grant of summary judgment in favor of World Color Press.