In the
United States Court of Appeals
For the Seventh Circuit

No. 01-2029

Teamsters & Employers Welfare Trust of Illinois,

Plaintiff-Appellant,

v.

Gorman Brothers Ready Mix,

Defendant-Appellee,

Appeal from the United States District Court
for the Central District of Illinois.
No. 99-3059--Richard Mills, Judge.

Argued December 4, 2001--Decided March 19, 2002


  Before Bauer, Posner, and Easterbrook,
Circuit Judges.

  Posner, Circuit Judge.  A multiemployer
welfare trust filed suit under ERISA in
1999 against the Gorman construction
company to recover some $200,000 in
delinquent contributions (including
interest and attorneys' fees) for the
period 1993-1998. 29 U.S.C. sec. 1145.
After a bench trial, the district judge
held the suit barred by the doctrine of
laches and so entered judgment for the
company. 139 F. Supp. 2d 976 (C.D. Ill.
2001).

  Gorman had signed a three-year
collective bargaining agreement with a
Teamsters local in 1991. The agreement
required Gorman to contribute to a
Teamsters welfare trust a specified
dollar amount weekly (rising from $63 in
the first year of the agreement to $105
in the last year of the latest successor
agreement) for any employee who drove a
ready-mix concrete truck during the week,
however small a fraction of his work week
the driving occupied. He might drive such
a truck for only an hour a week, yet
Gorman would have to contribute the same
dollar amount as if he'd spent his whole
work week in that activity. This was an
expensive proposition (imagine having to
make a $105 weekly contribution for a
$10-an-hour employee who worked one hour
a week), and Gorman failed to make the

required contributions, as was discovered by an audit conducted by the plan during the term of the collective bargaining agreement. Dale Stewart, however, who was both the head of the local union and the chairman of the welfare trust, told Eric Leonhardt (Gorman's proprietor), according to the latter, that as a favor to him he had "made the audit go away."

The collective bargaining agreement was renewed, with substantially the same terms except for the amount of the employer contributions, in 1994 and 1997. In 1998 the trust conducted another audit, again found that Gorman was not making the required contributions, and this time sued. Gorman admits that the trust has made a prima facie case for the recovery of the delinquent contributions, but, as we said, the district judge upheld the defense of laches.

"Laches," the corruption of an Old French word (lasche) meaning "lax," in law means culpable delay in suing. Traditionally, suits in equity were not subject to statutes of limitations, but such a suit could be dismissed on the basis of unreasonable, prejudicial delay by the plaintiff. Piper Aircraft Corp. v. Wag-Aero, Inc., 741 F.2d 925, 938-39 (7th Cir. 1984) (concurring opinion). The contrast is between rules and standards as regulatory devices. A statute of limitations cuts off the right to sue at a fixed date after the plaintiff's cause of action accrued. Laches cuts off the right to sue when the plaintiff has delayed "too long" in suing. "Too long" for this purpose means that the plaintiff delayed inexcusably and the defendant was harmed by the delay. Costello v. United States, 365 U.S. 265, 282 (1961); United States v. Administrative Enterprises, Inc., 46 F.3d 670, 672 (7th Cir. 1995); Herman v. City of Chicago, 870 F.2d 400, 401 (7th Cir. 1989); Whiting v. United States, 231 F.3d 70, 75 (1st Cir. 2000); Ivani Contracting Corp. v. City of New York, 103 F.3d 257, 259 (2d Cir. 1997).

The parties agree that ERISA does not contain a limitations periods for suits against employers to recover contributions owed to a multiemployer plan. 29 U.S.C. sec. 1145. Closest is 29 U.S.C. sec. 1451(f), which does cover suits by multiemployer plans, but only suits for withdrawal liability, Jay

Conison, Employee Benefit Plans in a Nutshell 19-20 (2d ed. 1998), which this suit is not; Gorman has not withdrawn from the Teamsters plan.

The usual practice when a federal statute fails to specify a limitations period for suits under it has been to "borrow" a state's analogous statute of limitations, and that is what we and other courts have done in the case of ERISA suits for the recovery of employers' delinquent contributions. Central States, Southeast & Southwest Areas Pension Fund v. Jordan, 873 F.2d 149, 152, 154 (7th Cir. 1989); Felton v. Unisource Corp., 940 F.2d 503, 511 (9th Cir. 1991); see generally Doe v. Blue Cross & Blue Shield United, 112 F.3d 869, 873 (7th Cir. 1997); Harrison v. Digital Health Plan, 183 F.3d 1235, 1238 (11th Cir. 1999) (per curiam); Adamson v. Armco, Inc., 44 F.3d 650, 652 (8th Cir. 1995). We remarked in Doe that a borrowed statute of limitations can be either state or federal, but the parties to this case do not argue for borrowing a federal statute of limitations, and we note that Trustees of Wyoming Laborers Health & Welfare Plan v. Morgen & Oswood Construction Co., 850 F.2d 613, 618-20 (10th Cir. 1988), a case similar to ours, refused to borrow the six-month limitations period in the National Labor Relations Act. Instead it borrowed the forum state's 10-year statute of limitations for suits on written contracts; that was the type of suit the court thought most like a suit for delin quent contributions. The Illinois statute of limitations that the district court borrowed for use in this case is also ten years. It is possible that some other statute of limitations, state or federal, would make a better fit with the nature and purpose of a suit for delinquent ERISA contributions, but we are not called upon to decide that, as the parties are not contending for a different statute of limitations.

For purposes of this appeal, therefore, it's as if ERISA contained a (10-year) statute of limitations; and this raises the question (not discussed by the parties) when if ever laches can be used to shorten a statute of limitations. It turns out that just as various tolling doctrines can be used to lengthen the period for suit specified in a statute of

limitations, so laches can be used to contract it. Hutchinson v. Spanierman, 190 F.3d 815, 823 (7th Cir. 1999); Maksym v. Loesch, 937 F.2d 1237, 1248 (7th Cir. 1991); Martin v. Consultants & Administrators, Inc., 966 F.2d 1078, 1100-01 (7th Cir. 1992) (concurring opinion). This is regardless of whether the suit is at law or in equity, because, as with many equitable defenses, the defense of laches is equally available in suits at law. Hot Wax, Inc. v. Turtle Wax, Inc., 191 F.3d 813, 822 (7th Cir. 1999); A.C. Aukerman Co. v. R.L. Chaides Construction Co., 960 F.2d 1020, 1029-30 (Fed. Cir. 1992) (en banc). We may assume without having to decide that, as with equitable tolling and (perhaps--the question is unsettled) equitable estoppel, the relevant doctrine of laches is that of the state whose statute of limitations is being borrowed. See Shropshear v. Corporation Counsel, 275 F.3d 593, 596-98 (7th Cir. 2001).

We are mindful that some courts have invoked a presumption against the use of laches to shorten the statute of limitations. E.g., Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc., 270 F.3d 298, 321 (6th Cir. 2001); United States v. Rodriguez Aguirre, 264 F.3d 1195, 1207-08 (10th Cir. 2001); Lyons Partnership v. Morris Costumes, Inc., 243 F.3d 789, 799 (4th Cir. 2001). One even made the presumption conclusive, Ivani Contracting Corp. v. City of New York, supra, 103 F.3d at 259-61, on the odd ground that abridging a statutory period for suit by means of a judge-made doctrine is in tension with the separation of powers. When Congress fails to enact a statute of limitations, a court that borrows a state statute of limitations but permits it to be abridged by the doctrine of laches is not invading congressional prerogatives. Ashley v. Boyle's Famous Corned Beef Co., 66 F.3d 164, 170 n. 4 (8th Cir. 1995) (en banc). It is merely filling a legislative hole. And none of the courts we've cited questions the use of the judge-made doctrines of equitable estoppel and equitable tolling to lengthen the statutory period--and laches, as the Hutchinson, Maksym, and Martin opinions cited above all point out (the majority as well as the concurring opinion in Martin, see 966 F.2d at 1090-91), is the mirror image of equitable estoppel.

This point turns out to be important in this case, and so we'll take a moment to explain it. The doctrine of equitable estoppel allows the plaintiff to extend the statute of limitations if the defendant has done something that made the plaintiff reasonably believe that he had more time to sue. E.g., LaBonte v. United States, 233 F.3d 1049, 1053 (7th Cir. 2000); Bomba v. W. L. Belvidere, Inc., 579 F.2d 1067, 1071 (7th Cir. 1978); Wall v. Construction & General Laborers' Union, Local 230, 224 F.3d 168, 176 (2d Cir. 2000). One example is the defendant's promising not to interpose the defense of the statute of limitations, Athmer v. C.E.I. Equipment Co., 121 F.3d 294, 296 (7th Cir. 1997); Cada v. Baxter Healthcare Corp., 920 F.2d 446, 450-51 (7th Cir. 1990); another is his concealing the cause of action from the plaintiff, Santa Maria v. Pacific Bell, 202 F.3d 1170, 1177 (9th Cir. 2000); Rhodes v. Guiberson Oil Tools Division, 927 F.2d 876, 878-79 (5th Cir. 1991); Pruet Production Co. v. Ayles, 784 F.2d 1275, 1280 (5th Cir. 1986); a third is promising to pay the plaintiff's claim, Bomba v. W. L. Belvidere, Inc., supra, 579 F.2d at 1071; McAllister v. FDIC, 87 F.3d 762, 767 (5th Cir. 1996). See generally Shropshear v. Corporation Counsel, supra, 275 F.3d at 597-98. Conversely, if a plaintiff does something that reasonably induces the defendant to believe he won't be sued and the defendant's ability to defend himself against the plaintiff's suit is impaired as a result, the plaintiff can be barred by the defense of laches from suing. Wauchope v. U.S. Dept. of State, 985 F.2d 1407, 1412 (9th Cir. 1993); TransWorld Airlines, Inc. v. American Coupon Exchange, Inc., 913 F.2d 676, 696 (9th Cir. 1990); EEOC v. Alioto Fish Co., 623 F.2d 86, 88-89 (9th Cir. 1980); 1 Dan B. Dobbs, Law of Remedies, sec. 2.4(4), p. 105 (2d ed. 1993). What is sauce for the goose (the plaintiff seeking to extend the statute of limitations) is sauce for the gander (the defendant seeking to con tract it).

Laches is thus a form of equitable estoppel rather than a thing apart. Maksym v. Loesch, supra, 937 F.2d at 1248; Thompson v. Board of County Commissioners, 34 P.3d 278, 280 (Wyo. 2001); Callenders, Inc. v. Beckman, 814

P.2d 429, 434 (Idaho App. 1991); Central Improvement Co. v. Cambria Steel Co., 210 Fed. 696, 713 (8th Cir. 1913) (per curiam), aff'd under the name Kansas City Southern Ry. v. Guardian Trust Co., 240 U.S. 166 (1916); 1 Dobbs, supra, sec. 2.4(4), p. 105. The only difference is which party asserts it. That is not a material difference; the fact that laches is asserted defensively by the employer sued by the plan, whereas equitable estoppel is used offensively to obtain extra benefits, does not destroy the symmetry between laches and equitable estoppel. Failure to recover employer contributions imposes the same cost on the plan as being forced to pay additional benefits in the same amount.

The symmetry is particularly marked in this case because it isn't really a case of laches at all, at least in the technical sense, though that is the term the district judge used and the terminology is supremely unimportant; for if we are right that laches and equitable estoppel are the same thing, it can't matter which term is used. The reason it is not a case of laches, strictly speaking, is that the Teamsters trust is not suing to recover the delinquent contributions identified in the first audit. Gorman's argument is not that the second suit, the suit on the later delinquencies, should have been filed sooner, but that it shouldn't have been filed at all because the company was misled by the disappearance of the first audit. The company is really arguing that the disappearance should estop the trust to bring a suit for later-accruing delinquencies, even if the suit is filed immediately after those delinquencies accrue. It's the fact that the conduct claimed to create an estoppel consists mainly of delay that gives the defense a laches flavor, since laches means delay.

Since laches and equitable estoppel are interchangeable--or, if not, since this is actually a case of the latter rather than of the former--the question arises whether equitable estoppel can ever be a defense to a suit by a multiemployer plan for delinquent contributions. Clearly not when it is invoked on the basis of words or acts by one of the employers in an effort to wrest larger benefits for the plaintiff participant or beneficiary than the terms of the plan allow. Central

States, Southeast & Southwest Areas Pension Fund v. Gerber Truck Service, Inc., 870 F.2d 1148, 1153 (7th Cir. 1989) (en banc); Black v. TIC Investment Corp., 900 F.2d 112, 115 (7th Cir. 1990); Bakery & Confectionery Union & Industry International Pension Fund v. Ralph's Grocery Co., 118 F.3d 1018, 1027 (4th Cir. 1997); Benson v. Brower's Moving & Storage, Inc., 907 F.2d 310, 313-14 (2d Cir. 1990). If equitable estoppel were successfully interposed in such a case, the employer would potentially be imposing uncompensated costs on the other employers belonging to the plan. However, as assumed in Illinois Conference of Teamsters & Employers Welfare Fund v. Mrowicki, 44 F.3d 451, 462-64 (7th Cir. 1994), and Trustees of Wyoming Laborers Health & Welfare Plan v. Morgen & Oswood Construction Co., supra, 850 F.2d at 624, a different conclusion could be reached in a case such as this, where estoppel is sought on the basis of words or conduct by a responsible official of the plan itself. True, estoppel can't be used to allow oral representations to expand the terms of an ERISA plan, Bowerman v. Wal-Mart Stores, Inc., 226 F.3d 574, 586 (7th Cir. 2000); Downs v. World Color Press, 214 F.3d 802, 805-06 (7th Cir. 2000), but the Teamsters trust has not pointed to any plan language that the invocation of laches, on the basis of Stewart's alleged assurances or otherwise, would violate. We have held that equitable estoppel can be used to toll the statute of limitations in a suit against an ERISA plan for benefits, Doe v. Blue Cross & Blue Shield United, supra, 112 F.3d at 876-77, and that is similar to what the district court did in this case. Gorman's defense fails not because ERISA bars such a defense, but because its elements have not been proved.

We can clear away some underbrush by noting the absence of any suggestion that Stewart, by promising to make the first audit "go away" (if that is what he said--it is Leonhardt's word against his and the district judge did not decide which one was telling the truth), was trying to hurt Gorman--to trick it into thinking it would never have to pay the contributions called for by its collective bargaining agreements with Stewart's local. It could not be to the plan's advantage to pull such a trick; there is no contention that the interest payable on delinquent

contributions makes a plan better off if it has to sue to recover such contributions than if it received the contributions as they came due. At worst Stewart was careless if he promised to forgive delinquent contributions due under the 1991 collective bargaining agreement; the question is whether his carelessness made Leonhardt reasonably believe that delinquent contributions under future collective bargaining agreements were likewise forgiven.

That Leonhardt's belief had to be reasonable is worth stressing, for certainly when laches is predicated on careless rather than deliberate conduct by the plaintiff (in the latter case it is canonically referred to as "acquiescence" rather than laches, Piper Aircraft Corp. v. Wag-Aero, Inc., supra, 741 F.2d at 933, illustrating the legal profession's occupational hazard of multiplying distinctions unnecessarily), the defendant's fault is relevant. Rozen v. District of Columbia, 702 F.2d 1202, 1204 (D.C. Cir. 1983) (per curiam); Bernard v. Gulf Oil Co., 596 F.2d 1249, 1257-58 (5th Cir. 1979), 619 F.2d 459, 463 (5th Cir. 1980) (en banc), aff'd on other grounds, 452 U.S. 89 (1981). While not a defense to intentional misconduct, the victim's fault is a defense (full or partial) to unintentional misconduct. E.g., FDIC v. W.R. Grace & Co., 877 F.2d 614, 618-19 (7th Cir. 1989); Gilchrist Timber Co. v. ITT Rayonier, Inc., 95 F.3d 1033, 1036 (11th Cir. 1996) (per curiam).

As a matter of fact, the particular fault that consists in being unreasonable in relying on a promise or other words (or conduct) of an opposing party is a defense in all estoppel cases, e.g., Office & Professional Employees International Union, Local No. 471 v. Brownsville General Hospital, 186 F.3d 326, 335-36 (3d Cir. 1999); Linkous v. United States, 142 F.3d 271, 278 (5th Cir. 1998), including all cases of laches, Martin v. Consultants & Administrators, Inc., supra, 966 F.2d at 1090-91; Bennett v. Tucker, 827 F.2d 63, 69 (7th Cir. 1987), whether the conduct giving rise to the claim of estoppel or laches is intentional or accidental. Innumerable decisions establish this proposition for ordinary cases of equitable estoppel, as distinct from the amphibian we have here. E.g., LaBonte v. United States, 233 F.3d 1049, 1053 (7th

Cir. 2000); Ashafa v. City of Chicago, 146 F.3d 459, 463 (7th Cir. 1998); Santa Maria v. Pacific Bell, 202 F.3d 1170, 1173 (9th Cir. 2000); Office & Professional Employees International Union, Local No. 471 v. Brownsville General Hospital, supra, 186 F.3d at 335-36.

The reasoning behind these decisions is that a statement no reasonable person would have relied on was probably not intended to mislead--and probably didn't mislead. AMPAT/Midwest, Inc. v. Illinois Tool Works Inc., 896 F.2d 1035, 1041-43 (7th Cir. 1990). As we have explained in the related context of fraud, the victim of a fraud "cannot close his eyes to a risk that is obvious, even if he does not himself perceive the risk. Although not required to expend a substantial effort to protect himself (as a tort victim in a regime of contributory negligence will often be required to do), the potential victim of a fraud may not ignore a manifest danger. That is recklessness. It differs by only a shade, if that, from intentional conduct--the conscious assumption of risk that defeats liability under the first aspect of the duty of reasonable reliance as we conceive it. The requirement of not being reckless serves in the law of fraud not only to define a duty, but also to disambiguate evidentiary ambiguities concerning the very existence of the fraud. If the victim acted recklessly in the face of the alleged fraud, it is difficult to believe that he was actually deceived; he may simply regret having assumed a risk that has turned out badly. The requirement of justifiable reliance backstops the jury's determination of actual reliance." Id. at 1042 (citations omitted).

In contrast, reliance is not an element of equitable tolling at all, see Singletary v. Continental Illinois National Bank & Trust Co., 9 F.3d 1236, 1241 (7th Cir. 1993); Stitt v. Williams, 919 F.2d 516, 522 (9th Cir. 1990), the distinct doctrine that permits the statute of limitations to be extended in cases where, without fault by the defendant, the plaintiff is unable by the exercise of due diligence to obtain the information that he needs in order to be able to sue within the statutory period. The basis for the extension is not the

plaintiff's reliance on words or actions of the defendant, so the issue of reasonable reliance does not even arise.

But here there had to be reliance and it had to be reasonable. As to whether there was reliance, we note that Leonhardt testified that he didn't understand the "making the audit go away" comment that he attributes to Stewart to mean that there would never be a subsequent audit under a subsequent collective bargaining agreement. He also testified that Stewart did not tell him he was making the collective bargaining agreements go away; never "indicate[d] that [Gorman] would be immune from any future audits"; and never told him "that [Gorman did] not have to comply with the . . . collective bargaining agreements." But even if, as Gorman argues and we greatly doubt, the inflection of Leonhardt's testimony--his tone of voice, the emphasis he placed on particular words--might justify a finding that the district judge never made that Leonhardt somehow understood Stewart to be promising that no future audits would be conducted or efforts made to collect delinquent contributions under future collective bargaining agreements, it would have been unreasonable for Leonhardt to rely on such an understanding as a basis for violating the future collective bargaining agreements. Leonhardt had no reason to think Stewart authorized to modify a collective bargaining agreement orally or to waive orally the entitlements of the welfare plan, let alone to do so in advance of such an agreement's coming into effect. He had no reason to think that Stewart could bind the other trustees of the welfare plan, let alone his or their successors. A reasonable person in Leonhardt's position, when asked to sign the subsequent collective bargaining agreements, would, at the very least, have asked Stewart whether Gorman would be bound by the provisions relating to contributions to the plan. He did not do so, or consult a lawyer, or take any other step to determine whether he could violate his contractual obligations with impunity. He must have been gambling that Stewart would be able to keep the Teamsters trust off his back. An unsuccessful gamble is not a form of reasonable reliance.

The district judge made no finding on

whether Stewart promised to make the first audit "go away" because he thought the defense of laches made out by the mere fact that the plan never claimed the delinquent contributions identified by that audit. To allow such a failure to create an estoppel, however, would be to equate Gorman to a person who thought that because a store had failed to bill him for an item that he had bought he could go on buying there and never again have to pay a bill. That would be a textbook case of unreasonable reliance.

Gorman's defense fails as a matter of law. The judgment in its favor is therefore reversed and the case remanded to the district court to compute the amount that Gorman owes the plan.

Reversed and Remanded.


Easterbrook, Circuit Judge, concurring in the judgment. As my colleagues observe, the parties to this case failed to address some potentially important issues: the nature and length of the statute of limitations, whether laches may be invoked to shorten that period, and the source of law (state or federal) used to determine the content of any equitable principles that may be applicable. The only serious debate was whether the district court clearly erred in finding that, when signing a collective bargaining agreement in 1994, Leonhardt relied on Stewart's statement several years earlier that he had made an audit "go away." The district judge answered "yes" after a trial, see 139 F. Supp. 2d 976 (C.D. Ill. 2001). Like my colleagues, I conclude that, if inking the 1994 pact reflects reliance of any kind, it was not reasonable for Leonhardt to have thought that Stewart's statement relieved Gorman Brothers for all time of the pension and welfare promises contained in the written agreements--and that, unless reliance is reasonable, it does not provide a defense. That conclusion, reached in the final three paragraphs of my colleagues' opinion, makes it unnecessary for us to address the many issues on which the parties' briefs are silent. I am reluctant to join an opinion that nonetheless ruminates about them at length.

Choice of law is the first difficulty. My colleagues assume that state law supplies the period of limitations for pension and welfare funds' collection suits under erisa and then discuss the equitable doctrines that federal courts apply to shorten or augment a statutory period for suit. That's an unstable combination. If state law supplies the period of limitations, then it also supplies all related doctrines of tolling and laches. So much is established for other statutes, see Hardin v. Straub, 490 U.S. 536 (1989); Shropshear v. Chicago, 275 F.3d 593 (7th Cir. 2001), and I can't see any reason for doing things differently here. The majority reserves this question in light of the parties' failure to address it, but Hardin and similar cases illuminate the path. If state law supplies the period of limitations, we must ask how Illinois handles a laches defense to the enforcement of a written contract, not how a federal court should deal with laches as a matter of first principles. Yet my colleagues' opinion does not cite any Illinois case or otherwise discuss that state's application of laches to contract disputes.

Equitable modifications come from state law, however, only if the statute of limitations itself is supplied by state law. Borrowing state statutes of limitations is the norm when federal law is silent, see North Star Steel Co. v. Thomas, 515 U.S. 29 (1995), but that norm comes with a proviso: "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking" then federal law supplies the period of limitations. DelCostello v. Teamsters, 462 U.S. 151, 172 (1983), quoted and reaffirmed in North Star, 515 U.S. at 35. One court of appeals has considered and rejected employers' contentions that the six-month period from the National Labor Relations Act is the sort of "closer analogy" that should be applied to erisa collection suits. See Wyoming Laborers Health & Welfare Plan v. Morgan & Oswood Construction Co., 850 F.2d 613 (10th Cir. 1988). I agree with that conclusion: the nlra, which is not concerned with debt collection suits, has

nothing on state law as a source of limitations under erisa. But erisa itself contains a statute of limitations governing debt-collection suits by multi-employer plans such as our plaintiff, the Teamsters Welfare Trust. That statute is sec.4301(f) of erisa (as added by the Multi-Employer Pension Plan Amendments Act of 1980), 29 U.S.C. sec.1451(f), which reads:

An action under this section may not be brought after the later of--

(1) 6 years after the date on which the cause of action arose, or

(2) 3 years after the earliest date on which the plaintiff acquired or should have acquired actual knowledge of the existence of such cause of action; except that in the case of fraud or concealment, such action may be brought not later than 6 years after the date of discovery of the existence of such cause of action.

The reference to "this section" comprises Subchapter III, Subtitle D--which is to say, 29 U.S.C. sec.sec. 1361-1453-- because sec.1451(a) is the enforcement mechanism for that subtitle, which deals principally with liability by employers that withdraw from multi-employer plans. See Bay Area Laundry Fund v. Ferbar Corp., 522 U.S. 192 (1997). Gorman Brothers did not withdraw from the plan; it simply failed to remit in full, so the Trust's suit is under 29 U.S.C. sec.1145 rather than sec.1451. Section 1145 does not contain a rule comparable to sec.1451(f). But this just poses, and does not answer, the question whether the rule of sec.1451(f) is a better fit than a rule drawn from state law. No court of appeals has discussed that question to date.

DelCostello held that the nlra's period governs hybrid claims that employers violated collective bargaining agreements and that unions violated their duty of fair representation in not preventing the employers' acts. These hybrid claims are like the unfair labor practices to which the nlra is addressed, the Court held, and limitations rules drawn from state law might complicate federal labor policy, which is supposed to be administered without regard to state law. Agency Holding Corp. v. Malley-Duff &

Associates, Inc., 483 U.S. 143 (1987), then held that civil actions under rico are governed by the four-year period in the Clayton Act, because many of rico's provisions have precursors in antitrust law, and Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350 (1991), followed up with a holding that implied rights of action under the federal securities laws must be pursued within the time provided for the express securities rights of action. In all three of these cases a federal statute spoke to the kind of claim under consideration. Just so with collection suits under erisa by multi-employer pension and welfare plans. Section 1451(f) of erisa deals with collection suits by multi-employer plans. Why not use it for this collection suit by a multi-employer plan? None of the cases collected at slip op. 3 applying state law to one or another claim under erisa mentions sec.1451(f)--or for that matter discusses the legal analysis of Agency Holding or Lampf, Pleva, a serious omission.

Section 1451(f) may be "a significantly more appropriate vehicle for interstitial lawmaking" for at least two additional reasons. First, erisa contains a sweeping preemption clause. 29 U.S.C. sec.1144(a). When judges fill other gaps in erisa, they use federal law, even if this means inventing federal common law. See Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 24 n.26 (1983). In both respects erisa is similar to labor law, which also has strong preemption rules accompanied by the creation of federal common law; DelCostello deemed the preemption of state substantive law a strong reason not to obtain periods of limitations from state law. Why, in a complex body of federal pension law, should the statute of limitations be the only bit of state law? Statutes of limitations often are tailored to the substantive rule; to import a body of state limitations law into a field from which all other state tendrils have been excluded makes little sense.

Second, sec.1451(f) solves the sort of problem presented by a defense of laches. The six-and-three structure of this rule, like the three-and-one structure of the statute used for securities-fraud claims, is incompatible with equitable tolling.

See Lampf, Pleva, 501 U.S. at 363. Subsection 1451(f)(2) supplies a limit of three years from discovery, which demonstrates that the six-year period in sec.1451(f)(1) is a statute of repose; equitable extensions are incompatible with periods of repose, according to Lampf, Pleva, and that message is driven home by the special extension to six years from discovery if fraud is entailed. Courts could not allow for additional equitable extensions without displacing a legislative choice; and if laches is just a mirror image of equitable tolling, then abbreviating the time on account of laches also is inappropriate. This reinforces the principle that courts may not on equitable grounds decline to enforce the terms of an erisa plan. See Bowerman v. Wal-Mart Stores, Inc., 226 F.3d 574, 586 (7th Cir. 2000); Frahm v. Equitable Life Assurance Society, 137 F.3d 955 (7th Cir. 1998). The parties failed to discuss the language of this plan, but its text permits the Trustees to collect contributions that employers should have made./* Any defense based on Stewart's oral representations would entail a departure from that language. This makes sec.1451(f), which knocks out any such equitable defense, a significantly better fit for erisa collection cases than is a rule drawn from state law that may allow equitable defenses. As we held in Central States Pension Fund v. Gerber Truck Service, Inc., 870 F.2d 1148 (7th Cir. 1989) (en banc), a multi-employer pension or welfare trust is not just an ordinary contract, and "ordinary" state contract law that may prevent a plan from enforcing its written terms accordingly is a bad match.

One could imagine a contrary argument: that sec.1451(f)'s limitation to suits under Subchapter III, Subtitle D of erisa reflects a legislative decision that some unusual features of withdrawal-liability actions require special rules, inappropriate to other suits under sec.1145 for delinquent contributions. Both sec.1145 and sec.1451 were added to erisa by the mppaa in 1980, but they were put in different subchapters. Section 1145 went into a subchapter that had an existing enforcement section (29 U.S.C. sec.1132, which lacks a statute of limitations), while Subchapter III, Subtitle D was new and needed an

enforcement clause, which sec.1451 supplied. Under the circumstances, it makes sense to understand the failure to extend sec.1451(f) to other collection suits by multi-employer trusts as an oversight, perhaps reflecting an assumption that sec.1132 provided one already. I see no reason to impute to Congress a decision that the six-and-three rule would be inappropriate in any way for other collection suits. Lampf, Pleva shows that there is no rule against applying a period of limitations in one section to a claim under a different section of the same statute; to the contrary, in Lampf, Pleva the Court took the existence of some limitations rules in the Securities Exchange Act as a reason to use federal rather than state law when resolving claims under sections that lacked their own periods of limitations.

As I said at the outset, the parties did not brief these matters. What I have written therefore is provisional, and the questions are open for the day when the parties present them for decision. But at least tentatively I am more attracted to the position that federal law supplies the period of limitations--and that laches is no defense to collection--than I am to a view that state law supplies the period while judges have a free hand to invent a common law of equitable tolling and laches for erisa collection suits.

FOOTNOTE

/* Section 4.5 gives the Trustees "power to demand, collect and receive Employer payments and all other money and property to which the Trustees may be entitled. . . . They shall take such steps, including the institution and prosecution of, or the intervention in, such legal or administrative proceedings as the Trustees in their sole discretion determine to be in the best interest of the Trust Fund for the purpose of collecting such payments, money and property, without prejudice, however, to the rights of the Union to take whatever steps it deems necessary and wishes to undertake for such purpose."