In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 17-1615

ESTATE OF SOAD WATTAR, *et al.*,

*Intervenors-Appellants*,

*v.*

HORACE FOX, JR.,

*Trustee-Appellee.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16-cv-4699 — **Robert M. Dow, Jr.**, *Judge*.

_____

No. 18-2197

IN RE: RICHARD SHARIF.

*Debtor*,

APPEAL OF: MAURICE SALEM

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17-cv-1500 — **Robert M. Dow, Jr.**, *Judge*.

_____

No. 22-2826

HAIFA SHARIFEH,

*Intervenor-Appellant,*

*v.*

HORACE FOX, JR.,

*Trustee-Appellee.*

————————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18-cv-8508 — **Martha M. Pacold**, *Judge.*

————————————

SUBMITTED APRIL 13, 2023[*] — DECIDED APRIL 21, 2023
RE-ISSUED JUNE 16, 2023[†]

————————————

Before EASTERBROOK, WOOD, and KIRSCH, *Circuit Judges.*

PER CURIAM. In 2010, the United States Bankruptcy Court for the Northern District of Illinois ruled that all assets held by the Soad Wattar Revocable Living Trust—including the Wattar family home—were part of the bankruptcy estate of

---

[*] We have agreed to decide each of the three cases discussed in this opinion without oral argument, because the briefs and the record adequately present the facts and legal arguments, and thus oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

[†] An earlier version of this opinion was originally issued as a nonprecedential order. Upon request of the bankruptcy judges of the Northern District of Illinois, the court has decided to revise and re-issue it as a formal opinion.

Richard Sharif. Sharif was the son of Soad Wattar, now deceased. As the sole trustee of the Wattar trust, Sharif had full control of its assets. Sharif's sisters, Haifa and Ragda Sharifeh, soon launched an effort to keep the trust proceeds out of their brother's bankruptcy estate; their strategy was to show that it was they who owned the trust assets, not their brother.

At issue in these appeals are the bankruptcy court's rulings on three motions: (1) Haifa's 2015 motion to vacate the court's decision that all trust assets belonged to the bankruptcy estate; (2) the sisters' joint 2016 motion for leave to sue the Chapter 7 trustee assigned to Sharif's bankruptcy for purported due-process violations; and (3) Ragda's 2016 motion seeking both reimbursement of money she allegedly spent on the family home and the proceeds from Wattar's life insurance policy, which the court had found to be an asset of the trust and therefore part of the bankruptcy estate. The bankruptcy court denied all three motions and sanctioned the sisters and their lawyer, Maurice Salem. Each ruling was affirmed on appeal to the district court. We are no more persuaded by the appellants' arguments (to the extent they develop any) than were the judges who already rejected them, and so we affirm.

## I

Sharif filed for Chapter 7 bankruptcy in 2009. His mother, Soad Wattar, had established a living trust, of which he was the sole trustee. (His sisters would later argue that a 2007 trust amendment had made Ragda the sole trustee, but that led nowhere.) When Wattar died in March 2010, Sharif produced a will that named him executor of her estate and provided for all Wattar's assets to pass into the trust. In June 2010, in a creditor's adversary proceeding against Sharif, the bankruptcy

court ruled that the trust's assets were part of the bankruptcy estate because Sharif had sole control over them and treated them as if they were his personal property. On the motion of the Chapter 7 bankruptcy trustee, Horace Fox, the bankruptcy court then ordered the trust assets to be turned over to the bankruptcy estate. (The parties refer to this as the turnover order.)

While Sharif appealed this ruling, see *Wellness International Network, Ltd. v. Sharif*, 727 F.3d 751 (7th Cir. 2013), *rev'd*, 575 U.S. 665 (2015), Haifa and Ragda sought control of the trust assets, first in state court and then as intervenors in Sharif's bankruptcy case. None of their efforts succeeded. By the bankruptcy court's count, at least ten rulings between 2010 and 2015 addressed who owned the trust assets and ruled against the sisters. Among these decisions was our 2015 affirmance of the bankruptcy court's initial decision that the trust and Sharif were alter egos, issued on remand from the Supreme Court of the United States. See *Wellness Int'l Network, Ltd. v. Sharif*, 617 F. App'x 589, 591 (7th Cir. 2015).

These rulings also included the bankruptcy court's denial of Haifa's 2015 motion on behalf of her mother's estate to vacate the turnover order. See Fed. R. Civ. P. 60(b)(4). When the trustee opposed the motion, Haifa attached to her reply brief a theretofore-unknown second will. Dated April 28, 2007—two days after the will Sharif had produced five years earlier—it purported to name Haifa the executor of their mother's estate. Haifa argued that the turnover order was invalid because the court had no power to dispose of the Wattar estate's assets until the true executor received notice, and Haifa allegedly had not been notified at the proper time.

The bankruptcy court denied Haifa's motion after making some critical findings: (1) Haifa had in fact received notice of the proceedings; (2) the second will was forged; (3) even if it were genuine, Haifa still lacked an interest in the disputed assets, which were property of the trust no matter who the will's executor was; and (4) in any event, laches barred Haifa's claim because she had unreasonably delayed pursuing it. Along the way, the court found that Haifa's testimony that she had not received notice of the bankruptcy proceedings or turnover order was not credible. The district court (Judge Pacold) affirmed.

In 2016, the sisters requested leave of the bankruptcy court to sue Trustee Fox and his attorney for violating their rights when the trustee moved for the transfer of trust assets to Sharif's bankruptcy estate. Advance permission from the bankruptcy court is required to sue a trustee for actions taken in that capacity. See *In re Linton*, 136 F.3d 544, 545 (7th Cir. 1998). The sisters, now represented by Maurice Salem, identified their prospective suit as a Fifth Amendment due-process claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). At the same time, Ragda moved for funds from the bankruptcy estate to reimburse herself for mortgage and tax payments she claimed to have made on the family home between 2010 and 2015. She also asserted that she was the proper beneficiary of Wattar's life insurance policy and was owed the proceeds because they were exempt from bankruptcy under Illinois law. See 735 ILCS 5/12-1001(f).

The bankruptcy court denied the sisters leave to sue after concluding that they failed to make the required initial showing that their claims had some foundation. Their one-page motion trailed off midsentence, and the attached complaint

sought to sue Fox and his attorney under *Bivens* for depriving them of property without "notice and a hearing." As for Ragda's motion, the bankruptcy court concluded that she cited no statutory or contractual basis for recouping her alleged expenditures on the home. Indeed, Ragda conceded that the payments were voluntary. Further, the bankruptcy exemption she invoked for the insurance proceeds did not apply to her; it is for dependents of the insured, which Ragda was not. Furthermore, only debtors can invoke exemptions, and Ragda had no claim to be the debtor.

The bankruptcy court then ordered Salem, Ragda, and Haifa to show cause why they should not be sanctioned. After receiving their responses and holding a hearing, the bankruptcy court concluded that their 2016 motions violated Federal Rule of Bankruptcy Procedure 9011 because they lacked a basis in law or evidence. The court further concluded that the motions had been filed "to harass the bankruptcy trustee, cause unnecessary delay and … increase the cost of litigation," and actually had increased the bankruptcy estate's litigation expenses. After reviewing in detail the history of the decade-plus bankruptcy litigation and the sisters' attempts to siphon off assets controlled by Sharif (and his other creditors), the court further determined that Salem, Ragda, and Haifa displayed "repeated disregard for the facts and the law" and that "[t]ime and again, [they] have shown a complete disregard for the judicial system, making blatant attempts to circumvent it." On that basis, the court issued sanctions: it barred Salem, Ragda, and Haifa from any further filings in the bankruptcy case and fined Salem $20,000. On appeal, the district court (Judge Dow) affirmed the denial of the motions and imposition of sanctions.

These events resulted in three separate appeals to this court. We initially consolidated the appeals of the rulings on the 2016 motions and sanctions, while Haifa's appeal of the denial of her motion to vacate proceeded in parallel. We now conclude that further consolidation is desirable. All three appeals spring from the same bankruptcy case and rest on a common factual background, and so it makes sense to resolve them together. We note that Salem has been suspended from the practice of law and, because he is proceeding *pro se*, he may represent only himself. Nevertheless, in their joint brief Haifa and Ragda adopt Salem's appellate arguments about their 2016 motions and sanctions. See Fed. R. App. P. 28(i).

## II

On appeal, Haifa challenges the denial of her 2015 motion to vacate the turnover of trust assets; Haifa and Ragda challenge the denial of their 2016 motions; and the two sisters and Salem all challenge the sanctions. Each of the challenged rulings pertains to a discrete matter within the overarching bankruptcy, and the bankruptcy court disposed of each one definitively. Both the district court and this court thus have jurisdiction over the appeals. 28 U.S.C. §§ 158(a), (d)(1); *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586–87 (2020). We review the bankruptcy court's findings of fact for clear error and the legal conclusions of both the bankruptcy court and district court *de novo*, with special deference to the bankruptcy court's assessment of credibility. *In re Dimas*, 14 F.4th 634, 639–40, 642 (7th Cir. 2021). We may affirm on any basis supported by the record, as long as it was raised below and the appellants had the opportunity to contest it. *McHenry County v. Raoul*, 44 F.4th 581, 588 (7th Cir. 2022); *In re Airadigm*

*Commc'ns, Inc.*, 616 F.3d 642, 652 (7th Cir. 2010) (bankruptcy appeal).

## A. Motion to Vacate the Turnover of Trust Assets

Recall that in 2015 Haifa moved to vacate the court's order requiring the trust assets to be turned over to the bankruptcy estate. Haifa contends that this step was necessary because, after the bankruptcy court's ruling, she obtained a newer version of the second will—this one certified by a Syrian court— that proves its veracity. She repeats her argument that her mother's estate was not bound by the turnover order because she, as purported executor, never received notice.

Though Haifa primarily challenges the bankruptcy court's finding that the second will is a forgery, we can resolve her appeal without wading into that morass. Even if Haifa were really the executor, she simply waited too long to assert the estate's rights. In the bankruptcy and district courts, the trustee raised the equitable defense of laches, which cuts off the right to sue when (1) the plaintiff has inexcusably delayed bringing suit, and (2) that delay harmed the defendant. See *Teamsters & Emps. Welfare Tr. v. Gorman Bros. Ready Mix*, 283 F.3d 877, 880 (7th Cir. 2002). Haifa does not meaningfully dispute the assertion that the delay was prejudicial to the bankruptcy estate, nor could she: if the second will controls, the trustee has been allocating assets improperly for years. We therefore focus on whether the delay is excusable.

Haifa's explanation for her years-long delay in producing and seeking to enforce the second will is unconvincing. She first argues that she lacked notice of the bankruptcy proceedings or turnover order. But even if, despite being a creditor, she was not served with filings or copies of rulings, we see no

error in the bankruptcy court's determination that Haifa had actual notice. Among other things, the record shows that Haifa and Ragda filed a state-court complaint in July 2010 that discussed the bankruptcy and the alter-ego order. Haifa gives us no reason not to defer to the bankruptcy court's assessment—based on inconsistent statements in other proceedings and her participation in the state-court litigation—that Haifa's testimony about when she learned of the bankruptcy was not credible. *Dimas*, 14 F.4th at 642.

Haifa next argues that she could not act until 2015 because the Supreme Court was considering a decision of this court, which, according to Haifa had "vacated" the turnover order in Sharif's appeal. Our decision, Haifa says, meant that the probate estate was "winning the trust" back from the bankruptcy estate, and she had to wait for her brother's Supreme Court appeal to conclude. That was not the nature of Sharif's appeal. But, in any case, we issued our decision in August 2013, meaning that Haifa had three years before then to challenge the turnover order. After all, she purports to have been aware of the second will from the time it was executed in 2007 and does not explain why she did not invoke it as soon as her brother began to act as executor. Further, Haifa's assertion is simply that she was the executor, and in that capacity was entitled to notice—she never has disputed that even under her version of the will, her mother's assets passed directly to the trust, which Haifa has never controlled. In short, her reasons for waiting are muddled at best and do not outweigh the prejudice to the bankruptcy estate.

The district court gave other reasons, including collateral estoppel, for rejecting Haifa's attempt to invalidate the

turnover order. We have no reason to reach these issues and express no opinion on them.

B. The 2016 Motions

Next, both sisters assert that the district court applied the wrong standard when it reviewed the bankruptcy court's denial of their motion for leave to sue the trustee. They assert that the district court should have reversed because the bankruptcy court failed to assess whether they made a *prima facie* case for the trustee's violation of their rights. But the bankruptcy court committed no such error. In its lengthy order discussing the motion's failings, the court simply made an assessment with which they disagree.

The bankruptcy court correctly concluded that the motion did not set forth a *prima facie* case for a right to relief against the trustee. It made no case at all: the motion trails off and does not even present a complete argument. And the argument it does attempt to present is frivolous. The sisters did not explain then—nor do they now—why they could sue a Chapter 7 trustee under *Bivens*.

The Supreme Court has repeatedly "emphasized that recognizing a cause of action under *Bivens* is 'a disfavored judicial activity.'" *Egbert v. Boule*, 142 S. Ct. 1793, 1802 (2022) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017)). To determine whether a plaintiff has stated a *Bivens* claim, we first must "ask whether the case presents 'a new *Bivens* context'— *i.e.*, is it 'meaningful[ly]' different from the three cases in which the Court has implied a damages action." *Id.* at 1803 (quoting *Ziglar*, 582 U.S. at 139). If so, we consider whether "there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress 'to weigh the

costs and benefits of allowing a damages action to proceed.’” *Id.* (quoting *Ziglar*, 582 U.S. at 136). “[E]ven a single reason to pause” is sufficient to bar the recognition of a new *Bivens* theory. *Id.* (internal quotations omitted).

The proposed claim here fails both steps. First, there is no doubt that the sisters’ claim that the Chapter 7 trustee and his counsel violated their Fifth Amendment due-process rights represents a new *Bivens* context. See *id.* at 1803 (stating that cases involving “a new category of defendants” represent new contexts (internal quotations omitted)). Second, the unique nature of a bankruptcy trustee’s role is more than sufficient reason to pause before recognizing a *Bivens* action against a trustee. Trustees have attributes of both private and state actors. They are not federal employees; they are private representatives appointed or elected to protect a bankruptcy estate. See 11 U.S.C. § 701(a)(1) (granting the U.S. Trustee the power to appoint a “disinterested person” from “the panel of private trustees” as an interim trustee). Nor are Chapter 7 trustees fully on the government’s payroll. Aside from a nominal fee of $60 to $120 per case, trustees are paid by the bankruptcy estate, not the federal government. See 11 U.S.C. §§ 330(b), 330(e) (nominal flat fees); 11 U.S.C. §§ 326(a), 330(a) (variable compensation tied to the value of assets in the estate). And like public defenders, who the Supreme Court has held are not state actors for purposes of section 1983 claims despite their government employment, see *Polk County v. Dodson*, 454 U.S. 312, 325 (1981), private trustees must represent the interests of the bankruptcy estate, not the interests of the government. See *Dechert v. Cadle Co.*, 333 F.3d 801, 802 (7th Cir. 2003) (explaining that trustees “hav[e] fiduciary obligations exclusively to the estate in bankruptcy”). Indeed, like public defenders, trustees may sometimes find themselves to

be the state's adversaries. See, *e.g.*, *United States v. Nordic Village Inc.*, 503 U.S. 30 (1992) (abrogated by statute) (involving a suit brought by a trustee against the IRS).

In some contexts, however, the bankruptcy trustee may be viewed as a sort of "court officer." See Norton Bankr. L. & P. 3d § 28:1, Westlaw (database updated May 2023). From this perspective, "a trustee in bankruptcy is working in effect for the court that appointed or approved him, administering property that has come under the court's control by virtue of the Bankruptcy Code." *In re Linton*, 136 F.3d at 545. For that reason, courts have long held that a plaintiff seeking to sue a trustee "concerning actions taken by him in the course of his trusteeship must obtain the permission of the bankruptcy court." See *id.* at 545–47 (discussing the development of the doctrine and affirming its applicability to suits against trustees in state court). Relatedly, courts have recognized that trustees enjoy some degree of immunity for acts taken pursuant to court orders or within the scope of their trusteeship, though the contours of this doctrine remain unsettled. See, *e.g.*, *In re McKenzie*, 716 F.3d 404, 413 (6th Cir. 2013) (explaining that, although "[b]ankruptcy trustees serve in a variety of functions and may be immune for some but not all of those functions, … a bankruptcy trustee is ordinarily entitled to quasi-judicial (or derivative) immunity from suit by third parties for actions taken in his official capacity"); *In re Harris*, 590 F.3d 730, 742 (9th Cir. 2009) ("Bankruptcy trustees are entitled to broad immunity from suit when acting within the scope of their authority and pursuant to court order." (quoting *Bennett v. Williams*, 892 F.2d 822, 823 (9th Cir. 1989))).

In sum, the unique nature of the trustee's role is sufficient to counsel hesitation before recognizing an implied cause of

action for money damages against a trustee, especially in light of Congress's broad power to "establish … uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const. art. I, § 8, cl. 4. We therefore decline to recognize the proposed *Bivens* claim.

The sisters also develop no argument supporting a legal basis for Ragda to recoup the mortgage and tax payments she allegedly made, or to receive the life insurance proceeds that were payable to the trust as beneficiary (and then transferred to the bankruptcy estate). The sisters' challenges to the denial of the 2016 motions are underdeveloped and unsupported by law. Indeed, we would have been within our rights to consider them waived, see *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012), but we have attempted to address the arguments we can discern.

## C. The Bankruptcy Court's Sanctions

We review for abuse of discretion the bankruptcy court's imposition of sanctions on Ragda, Haifa, and Salem. See *In re Rinaldi*, 778 F.3d 672, 676 (7th Cir. 2015). Those sanctions included a bar on further filings in the bankruptcy case plus a $20,000 fine for Salem. We find no such abuse here—indeed, we find nothing wrong with the court's action. Salem principally argues that sanctions were inappropriate because the motions he filed were not "another attempt to obtain the same relief" sought in previous motions and were therefore not repetitive. While this may be true in the narrow sense—no party previously sought to sue the bankruptcy trustee under *Bivens*—the bankruptcy court reasonably concluded that these motions represented yet another refusal to accept its decision that the trust assets were part of the bankruptcy estate.

Salem's focus on repetitiveness misses the point. The bankruptcy court determined that *no* argument in the 2016 motions was supported by fact or law and that the motions were intended to harass the trustee and increase the cost of litigation. See Fed. R. Bankr. P. 9011(b)(1)–(2). As discussed above, the appellants present no legal basis for their motions, even as they appeal the rulings. And they do not address the bankruptcy court's finding that those motions were intended to harass the trustee and needlessly increase the cost of litigation. They offer only the bare and incorrect assertion that the bankruptcy court's lengthy sanctions order failed to address certain issues. The burden is on the appellants to tell us why the sanctions were so off-base that imposing them was an abuse of discretion. They cannot prevail when they fail to engage with the reasons why the bankruptcy court imposed, and the district court upheld, the sanctions. See *Klein v. O'Brien*, 884 F.3d 754, 757 (7th Cir. 2018). We add that barring these litigants from further filings in the bankruptcy action was a sensible response to their frivolous attempts to undermine long-settled issues.

### III

We have considered appellants' other arguments, including Salem's umbrage at the documentation of his history of litigation misconduct outside of these cases and a frivolous suggestion that the sanctions chill protected speech. None has merit. We thus AFFIRM the judgments of the district courts.